~AO 241                                                                                          Page 2 (Rev.12/04)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF `08 - 027`
### HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Delaware |
|---|---|

| Name (under which you were convicted): Cecil Hall | Docket or Case No: |
|---|---|

| Place of Confinement : Delaware Correctional Center, Smyrna, De | Prisoner No.: 00104141 |
|---|---|

| Petitioner( include the name under which you were convicted) custody of petitioner) | Respondent (authorized person having |
|---|---|
| Salih (Cecil Hall) | |
| v. | Perry Phelps, Warden |

The Attorney General of the State of Joseph r. Biden III

**FILED**

**JAN 1 4 2008**

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### PETITION

1.   (a) Name and location of court that entered the judgment of conviction you are challenging:

the Superior Court of the State of Delaware, New Castle County.

(b) Criminal docket or case number (if you know): I.D. No. 0506014139.

2.   (a) Date of the judgment of conviction (if you know): 12/01/06

(b) Date of sentencing: 12/01/06

3.   Length of sentence: 10 years pursuant to 11 Del. C., subsection 4214(a).

4.   In this case, were you convicted on more than one count or of more than one crime?     ☒ Yes     ☐ No

5.   Identify all crimes of which you were convicted and sentenced in this case:

2 counts of burglary 3rd Degree.

6.   (a) What was your plea? (Check one)

☐ (1)   Not guilty          ☐ (3)   Nolo contendere (no contest)

☒ (2)   Guilty              ☐ (4)   Insanity plea

~AO 241
(Rev.12/04)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count

or charge, what did you plead guilty to and what did you plead not guilty to?
   Plead guilty to Two (2) counts of burglary.  Challenge is to sentence on Federal grounds.

(c) If you went to trial, what kind of trial did you have? (Check one)

                    ☐ Jury          ☒ Judge only

7.      Did you testify at a pretrial hearing, trial, or a post-trial hearing?

                    ☐ Yes          ☒ No

8.      Did you appeal from the judgment of conviction?

                    ☒ Yes          ☐ No

9.      If you did appeal, answer the following:

        (a) Name of court: Delaware Supreme Court

        (b) Docket or case number (if you know): 649, 2006

        (c) Result:: Denied without hearing Two (2) raised constitutional issues.

        (d) Date of result (if you know): 10/30/07

        (e) Citation to the case (if you know): n/a

        (f) Grounds raised: Constitutional challenges to sentence on double jeopardy and due process

grounds.

        (g) Did you seek further review by a higher state court?      ☒ Yes          ☐ No
              If yes, answer the following:

              (1) Name of court: Delaware Supreme Court

              (2) Docket or case number (if you know): 649, 2006.

              (3) Result: File motion for rehearing en Banc concerning court's failure to hear

claims presented.  Court denied motion without written order or opinion.

              (4) Date of result (if you know) 11/16/07

(5) Citation to the case (if you know): n/a

(6) Grounds raised: Supreme Court avoided two (2) constitutional challenges to

sentence. Sought rehearing to have issues addressed on the merits.

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☒ Yes   ☐ No

If yes, answer the following:

(1) Docket or case number (if you know): unknown

(2) Result: pending.

(3) Date of result (if you know): n/a

(4) Citation to the case (if you know): n/a

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or
       motions concerning this judgment of conviction in any state court?    ☐ Yes  ☒ No

11     If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court: n/a

       (2) Docket or case number (if you know): n/a

       (3) Date of filing (if you know): n/a

       (4) Nature of the proceeding: n/a

       (5) Grounds raised: n/a

       (6) Did you receive a hearing where evidence was given on your petition, application, or motion?
       ☐ Yes       ☒ No

       (7) Result: n/a

       (8) Date of result (if you know): n/a

~AO 241

(Rev.12/04)

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: n/a

(2) Docket or case number (if you know): n/a

(3) Date of filing (if you know): n/a

(4) Nature of the proceeding: n/a

(5) Grounds raised: n/a

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☒ No

(7) Result: n/a

(8) Date of result (if you know): n/a

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: n/a

(2) Docket or case number (if you know): n/a

(3) Date of filing (if you know): n/a

(4) Nature of the proceeding: n/a

(5) Grounds raised: n/a

~AO 241
Rev.12/04)

(6) Did you receive a hearing where evidence was given on your petition,

application, or motion?

☐ Yes        ☒ No

(7) Result: n/a

(8) Date of result (if you know): n/a

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application,

or motion?

| | | |
|---|---|---|
| (1) First petition: | ☒Yes | ☐ No |
| (2) Second petition: | ☐Yes | ☒ No |
| (3) Third petition: | ☐Yes | ☒ No |

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not: n/a

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE: The Delaware Supreme Court denied petitioner fundamental due process when it intentionally avoided hearing two (2) constitutional challenges properly presented to it on direct appeal, and this court should define relief to be afforded under the Unti-Terrorism and Effective Death Penalty Act on 1996 under the circumstances of this case, to safeguard against state intentional practice of depriving a criminal defendant of fderal constitutional challenges to conviction and sentence in light of the limiting effect of the Anti-Terrorism and Effective Death Penalty Act of 1996.**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Petitioner raised his challenges by way of opening brief which were avoided by the De supreme Court in its order/opinion, dated 10-30-07. Petitioner filed a motion for rehearing en Banc seeking the court's review of the avoided issues. The De Supreme Court denied petitioner's motion for rehearing en Banc without written order or opinion in an intentional attempt to foreclose a non-frivolous constitutional challenge made to sentence and habitual offender statutes on double jeopardy, due process and 6th Amendment grounds.

(b) If you did not exhaust your state remedies on Ground One, explain why: the issues were properly presented to the State Supreme Court by way of opening brief, and then by motion for rehearing en Banc which were both avoided by the court.

~AO 241                                                                                    Page 7
(Rev.12/04)

(c)   **Direct Appeal of Ground One:**
(1) if you appealed from the judgment of conviction, did you raise this issue?      ☐ Yes ☒ No

(2) if you did not raise this issue in your direct appeal, explain why: Because the Supreme Court
intentionally avoided the issues presented by opening brief and motion for rehearing
en Banc.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state
trial court?

☐Yes   ☒ No

(2) if your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: n/a

Name and location of the court where the motion or petition was filed: n/a

Docket or case number (if you know): n/a

Date of the court's decision: n/a

Result (attach a copy of the court's opinion or order, if available): n/a

(3) Did you receive a hearing on your motion or petition?                  ☐Yes      ☒ No
(4) Did you appeal from the denial of your motion or petition?             ☐Yes      ☒ No
(5) If your answer to Question (d) (4) is "Yes," did you raise this issue in the appeal    ☐Yes      ☒ No
(6) If your answer to Question (d) (4) is "Yes," state:

Name and location of the court where the appeal was filed: n/a

Docket or case number (if you know): n/a

Date of the court's decision: n/a

Result (attach a copy of the court's opinion or order, if available): n/a

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: n/a

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: n/a

**GROUND TWO: Petitioner's sentence as a habitual offender was barred as a subsequent crimina sanction under the Double Jeopardy prohibition against multiple punishment when a previous order of restitution for Delaware's burglary offenses were entered in a Pennsylvnaia Court of Common Pleas by way of plea agreement one year earlier, as restitution is a criminal sanction for double jeopardy analysis under the circumstances of this case.**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Petitioner was arrested as a result of a multi-jurisdictional investigation of burglaries committed against retail stores owned by Joseph A. Banks Clothier, a Pennsylvania corporation, in both Delaware and Pennsylvania, which included restitution for both stores. the Pennsylvania order of restitution by way of plea negotiation is a criminal sanction under both state statutory schemes and must act as a constitutional bar against the subsequent Delaware sentence imposed a year later.

(b) If you did not exhaust your state remedies on Ground Two, explain why: the claim was presented to the Delaware Supreme Court which was erroneously denied based on a incorrect finding theat restitution is remedial and not a criminal sanction irrespective of it's criminal codification.

    (c)      **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?      ☒ Yes   ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why: n/a

    (d)      **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☐ Yes  ☒ No

    (2) If your answer to Question (d) (I) is "Yes," state:

    Type of motion or petition: n/a

    Name and location of the court where the motion or petition was filed: n/a

    Docket or case number (if you know): n/a

    Date of the court's decision: n/a

--AO 241
(Rev 12/04)

Result (attach a copy of the court's opinion or order, if available): n/a

| | | |
|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ☐ Yes | ☒ No |
| (4) Did you appeal from the denial of your motion or petition | ☐ Yes | ☒ No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ☐ Yes | ☒ No |

(6) If your answer to Question (d) (4) is "Yes," state:

Name and location of the court where the appeal was filed: n/a

Docket or case number (if you know): n/a

Date of the court's decision: n/a

Result (attach a copy of the court's opinion or order, if available): n/a

(7) If your answer to Question (d) (4) or Question (d) (5) is "No," explain why you did not raise this issue: n/a

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two:n/a

**GROUND THREE:** The prior judgment of the Pennsylvania Court, pursuant to the res judicata effect of the Full Faith and Credit Clause, Article IV, Section 1 of the United States Constitution, bars Delaware's superior Court finding of habitual offender status which is tantamount to a finding of incorrigibility, because the Pennsylvania court previously found that the offenses were the result of neuro-psychiatric side effects of prescirbed medication which is a contrary conclusion of a factual finding of incorrigibility.

(a)    Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): On 12-12-05, the Pennsylvania Court of Common Pleas for Delaware County found that petitioner's criminal conduct was the direct result of side effects of medication, adopting a psychiatric report, which is completely contrary to the State of Delaware's finding that petitioner is incorrigibile which is the intended purpose of punishment pursuant to Delaware's habitual offender statute.

~AO 241
(Rev. 12/04)

(b) If you did not exhaust your state remedies on Ground Three, explain why? the Delaware Supreme Court avoided addressing

this constitutional challenge to petitioner's sentence even after it was presented by motion for rehearing en Banc.

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☒ Yes        ☐ No

(2) (f you did not raise this issue in your direct appeal, explain why: n/a

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes        ☒ No

(2) If your answer to Question (d) (1) is "Yes," state:

Type of motion or petition: n/a

Name and location of the court where the motion or petition was filed: n/a

Docket or case number (if you know): n/a

Date of the court's decision: n/a

Result (attach a copy of the court's opinion or order, if available): n/a

(3) Did you receive a hearing on your motion or petition?        ☐ Yes        ☒ No

(4) Did you appeal from the denial of your motion or petition?        ☐ Yes        ☒ No

(5) If your answer to Question (d) (4) is "Yes," did you raise this issue in the appeal?        ☐ Yes        ☒ No

(6) If your answer to Question (d) (4) is "Yes," state:

Name and location of the court where the appeal was filed: n/a

Docket or case number (if you know): n/a

Date of the court's decision: n/a

Result (attach a copy of the court's opinion or order, if available): n/a

~AO 241                                                                                      Page 11
(Rev.12/04)

(7) If your answer to Question (d) (4) or Question (d) (5) is "No," explain why you did not raise this issue: n/a

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used
       exhaust your state remedies on Ground Three: n/a

**GROUND FOUR:** The Delaware habitual offender statute and practices are unconstitutionally vague, and create an
unconstitutional conclusive presumption of incorrigibility contrary to procedural and substantive due process of
law, and the 6th Amendment, and violate the procedural mandate laid down by the United States Supreme Court
in Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), blakely v. Washington, 542 US 296 (2004); and United States
v. Booker, 125 S.Ct. 738 (2205), requiring proof of incorrigibility beyond a reasonable doubt before a jury on the
issue of incorrigibility which is the legislative basis of the status.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): The Delaware habitual criminal
statutes has been interpreted to be a legislatively created status of incorrigibility, and state prcedure establishes a
practice of creating a conclusive presumption of incorrigibilty on prior convictions alone, when in this case the
presentence report establishes that petitioner committed the offenses as a result of the side effects of prescribed
medication which is contrary to a finding of incorrigibility. the lower court deprived petitioner of both proedrual
and substantive due process when it did not hold a hearing, with the right to a jury, on the issue of incorrigibility in
light of the presentence report.

(b) If you did not exhaust your state remedies on Ground Four, explain why: The issue was raised on direct appeal and avoided
by the court. A subsequent motion for rehearing en Banc was filed and denied without written order or opinion.

(c)    **Direct Appeal of Ground Four:**
       (1) If you appealed from the judgment of conviction, did you raise this issue              ☒ Yes    ☐ No
       (2) If you did not raise this issue in your direct appeal, explain why: n/a

(d)    **Post-Conviction Proceedings:**
       (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
              ☐ Yes   ☒ No
       (2) If your answer to Question (d)(1) is "Yes," state: n/a
       Type of motion or petition: n/a

~AO 241
(Rev. 12/04)

Name and location of the court where the motion or petition was filed: n/a

Docket or case number (if you know): n/a

Date of the court's decision: n/a

Result (attach a copy of the court's opinion or order, if available): n/a

(3) Did you receive a hearing on your motion or petition?      ☐ Yes  ☒ No

(4) Did you appeal from the denial of your motion or petition?     ☐ Yes  ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☒ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: n/a

Docket or case number (if you know): n/a

Date of the court's decision: n/a

Result (attach a copy of the court's opinion or order, if available): n/a

(7) If your answer to Question (d) (4) or Question (d) (5) is "No," explain why you did not raise this issue:

n/a

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: n/a

~AO 241
(Rev.12/04)

Page 13

13.    Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☒ Yes    ☐ No

        If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: n/a

    (b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them: n/a

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? ☐ Yes    ☒ No

    If"Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date *of* the court's decision, and the result for each petition, application, or motion filed. .Attach a copy of any court opinion or order, if available. n/a

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? ☒ Yes    ☐ No

    If"Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised.All grounds are raised in a petition for writ of certiorari in the United States Supreme.

~AO 241
(Rev.12/04)

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment
      you are challenging:

      (a) At preliminary hearing:          n/a.  Superior Court rule 9 Indictment.

      (b) At arraignment and plea:          Dade Werb, PD

      (c) At trial:                         guilty plea

      (d) At sentencing:                    Dade Werb, PD

      (e) On appeal:                        pro se

      (f) In any post-conviction proceeding:      n/a

      (g) On appeal from any ruling against you in a post-conviction proceeding: n/a

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are
      challenging?       ☐ Yes   ☒ No
      (a) If so, give name and location of court that imposed the other sentence you will serve in the future:
      n/a
      (b) Give the date the other sentence was imposed: n/a
      (c) Give the length of the other sentence: n/a
      (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the
      future?
                          ☐ Yes    ☒ No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the
      one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*
      n/a

~AO 241
(Rev.12/04)

---

*The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in \part that:

   (1)   A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody
         pursuant to the judgment of a State court. The limitation period shall run from the latest of:

         (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time
               for       seeking such review;

         (B)   the date on which the impediment to filing an application created by State action in violation of the
               Constitution  or laws of the United States is removed, if the applicant was prevented from filing by
               such state action;

         (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the
               right has been newly recognized by the Supreme Court and made retroactively applicable to cases on
               collateral review; or

         (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through
               the exercise of due diligence.

~AO 241
(Rev.12/04)

(2)         The time during which a properly filed application for State post-conviction or other collateral
            review with respect to the pertinent judgment or claim is pending shall not be counted
            toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: issuance of a writ of habeas corpus

vacating sentence and declaration of habitual offender status.

or any other relief to which petitioner may be entitled.



                                                    Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition
for

Writ of Habeas Corpus was placed in the prison mailing system on 1/15/08 (month, date, year).

Executed (signed) on 1/15.08 (date).

                                                    Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this
petition.

IN FORMA PAUPERIS DECLARATION

District Court of Delaware

[insert appropriate court]

\*\*\*\*\*

IM SALIM HALL
SBI# 104141 UNIT W-1
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977





Clerk
United States District Court
844 King Street
Wilmington, DE
19401

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CECIL L. HALL (SALIH), | § | |
| | § | No. 649, 2006 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | in and for New Castle County |
| STATE OF DELAWARE, | § | Cr. ID No. 0506014139 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: August 24, 2007
Decided: October 30, 2007

Before **HOLLAND**, **BERGER** and **JACOBS**, Justices

## O R D E R

This 30th day of October 2007, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1)    On August 8, 2006, the defendant-appellant, Cecil L. Hall (Salih), entered a plea of guilty to two counts of Burglary in the Third Degree, in exchange for which the State dismissed additional charges of felony theft, criminal mischief, attempted burglary and attempted felony theft.[1]    On December 1, 2006, the Superior Court declared Hall to be a

---

[1] The record reflects that, in two separate incidents in April and May 2005, Hall broke into Joseph A. Bank men's clothing store in Greenville, Delaware, and stole a number of leather coats and men's suits.

Exhibit A

habitual offender[2] and sentenced him to a total of 12 years at Level V, to be suspended after 10 years for decreasing levels of supervision. This is Hall's direct appeal.[3]

(2)    The transcript of Hall's plea colloquy reflects that the Superior Court judge reviewed with Hall his signed Truth-in-Sentencing Guilty Plea form and his signed Plea Agreement. Hall stated that he understood what the documents contained and that he had signed them voluntarily. Hall also acknowledged that he was satisfied with his counsel's representation in connection with the plea agreement. When asked by the judge if he understood that he could be sentenced to the maximum penalty permitted under the law, despite the prosecutor's recommendation, Hall stated that he was. Hall also acknowledged that he was a habitual offender and, as such, could be sentenced to a life term on each of the two burglary charges.

(3)    The transcript of the sentencing hearing reflects that, prior to the hearing, Hall filed a pro se motion seeking dismissal of his charges on double jeopardy grounds. Specifically, Hall argued that the Delaware charges were invalid because the Pennsylvania Court of Common Pleas previously had ordered him to pay restitution to Joseph A. Bank for

---

[2] Del. Code Ann. tit. 11, §4214(a).

[3] Following an evidentiary hearing in the Superior Court, this Court permitted Hall to proceed pro se in his direct appeal. Supr. Ct. R. 19(c) and 26(d) (iii).

2

Exhibit A

burglarizing stores in Pennsylvania and Delaware. Hall filed the motion pro se because his attorney found no legal basis for it and refused to file it. The Superior Court judge declined to consider Hall's pro se motion. The sentencing transcript also reflects that Hall's attorney offered evidence of Hall's relapse into drug addiction in mitigation of his crimes. The Superior Court judge was not persuaded to lessen Hall's sentence on that basis.

(4)   In this appeal, Hall claims that a) the restitution order issued in Pennsylvania precludes his Delaware burglary convictions on double jeopardy grounds; and b) his sentence as a habitual offender constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

(5)   Hall claims that his Delaware burglary convictions violate principles of double jeopardy. Under Delaware law, a voluntary guilty plea constitutes a waiver of any alleged errors or defects occurring prior to the entry of the plea.[4]   The transcript of Hall's guilty plea colloquy clearly reflects that his guilty plea was voluntary. As such, Hall has waived his claim of a double jeopardy violation.

(6)   There is no merit to Hall's claim in any case. The record reflects that Hall burglarized a Joseph A. Bank men's store in Glen Eagle

---

[4] *Downer v. State*, 543 A.2d 309, 312-13 (Del. 1988).

3

$Exhibit\ A$

Shopping Center in Pennsylvania between April and June 2005. The Pennsylvania Court of Common Pleas judge ordered Hall to pay restitution to Joseph A. Bank for the total amount of its property loss, including the losses incurred in Delaware.[5] However, the judge stressed that Pennsylvania did not have jurisdiction over the Delaware crimes.[6] Because Hall was not charged with or convicted of the Delaware burglaries in Pennsylvania, and was not subject to criminal punishment for the Delaware burglaries in Pennsylvania, double jeopardy is not implicated.[7]

(7)    Hall also claims that his sentence as a habitual offender constitutes cruel and unusual punishment. Sentences are unconstitutional if they are grossly disproportionate to the crime being punished.[8] This Court utilizes a two-step analysis to determine whether a habitual offender's sentence is grossly disproportionate to the crime being punished. First, we compare the sentence imposed to the crime committed.[9] Only if that comparison leads to an inference of gross disproportionality will the Court

---

[5] The purpose of restitution is to compensate the victim of a crime, not to "punish" the perpetrator of the crime. *Pratt v. State*, 486 A.2d 1154, 1158 (Del. 1983).
[6] Conversely, the Delaware Superior Court did not order restitution because the Pennsylvania restitution order covered all of Joseph A. Bank's losses.
[7] *Green v. United States*, 355 U.S. 184, 187-88 (1957) (The double jeopardy clause protects against successive prosecutions and multiple punishments for the same offense.)
[8] *Crosby v. State*, 824 A.2d 894, 908 (Del. 2003).
[9] Id. at 907.

4

Exhibit A

proceed to the second step -- i.e., a comparison of the defendant's sentence with those in similar cases.[10]

(8)    At his plea colloquy, Hall acknowledged that he qualified as a habitual offender and that the Superior Court could sentence him to two separate life sentences on that basis. Instead, the judge sentenced him to 10 years at Level V on his first burglary conviction and to 2 years of suspended Level V time on his second burglary conviction. Considering Delaware's legitimate public policy interest in punishing and deterring habitual offenders,[11] the sentencing judge's discretion to sentence within the maximum statutory range, and Hall's actual sentence relative to the maximum sentence available under the statute, we do not find that Hall's sentence raises an inference of disproportionality.

(9)    Hall argues in his reply brief that his guilty plea was involuntary because he believed that the judge would excuse his crimes based on his relapse into drug dependency. He claims that, at sentencing, the Superior Court prevented him from presenting these mitigating circumstances. Hall is factually incorrect. The sentencing transcript reflects that Hall's attorney made a lengthy presentation regarding the mitigating factors in the case, including Hall's relapse into drug addiction, but that the

---

[10] Id. at 906.
[11] Id. at 907.

5

Exhibit A

Superior Court, within its discretion, simply did not accept those arguments. Based on all of the above factors, we conclude that Hall's second claim is without merit.

(10)  This Court has reviewed the record carefully and has concluded that Hall's appeal is wholly without merit and devoid of any arguably appealable issue.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Carolyn Berger
Justice

6

$Exhibit A$

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

Salih aka Cecil Hall,                    )
                                         )
    Defendant Below,                 )
    Appellant,                       )
                                         )
v.                                       )        No. 649, 2006
                                         )
State of Delaware,                       )
                                         )
    Plaintiff Below,                 )
    Appellee                         )

### ON APPEAL FROM THE SUPERIOR COURT
### OF THE STATE OF DELAWARE
### IN AND FOR NEW CASTLE COUNTY

### APPELLANT'S OPENING BRIEF

Dated: <del>6 /0 07</del>  $5- 27 \cdot 07$

Salih aka Cecil Hall,
SBI# 104141
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

$Exhibit B$

# TABLE OF CONTENTS

Pages

TABLE OF CITATIONS                                                                                      ii

NATURE OF PROCEEDINGS                                                                          1

SUMMARY OF ARGUMENT                                                                             3

STATEMENT OF FACTS                                                                                  4

ARGUMENT:

        I."IS THE DEFENDANT ENTITLED TO
DOUBLE JEOPARDY PROTECTION
AGAINST MULTIPLE PUNISHMENT
WHEN THE RECORD ESTALBISHES THAT
AN ORDER OF RESTITUTION HAD
PREVIOUSLY BEEN ENTERED IN THE
DELAWARE COUNTY PENNSYLVANIA
COURT OF COMMON PLEAS"                                                               10

        II."SENTENCING APPELLANT AS A
HABITUAL OFFENDER IN THE INSTANT
CASE VIOLATES PROCEDURAL AND
SUBSTANTIVE DUE PROCESS,
ESTABLISHES AN UNCONSTITUTIONAL
CONCLUSIVE PRESUMPTION OF
INCORRIGIBILITY AND OFFENDS
PROHIBITIONS AGAINST CRUEL AND
UNUSUAL PUNISHMENT."                                                                    25

CONCLUSION                                                                                               49

i

$Exhibit$ B

# TABLE OF CITATIONS

Cases:                                                                                      Page

.Block Burger v. US, 52 S.Ct 180................................................................. 17

State v. Norris, Del. Gen. Sess., 73 A.2d 790 (1950)...................................... 17

State v. Simmons, Del. Super., 99 A.2d 401 (1953)......................................... 17

Petition of Hovey, 545 A.2d 626................................................................ 13

State v. Heitter, Del. Supr., 203 A.2d 69 (1964).............................................. 17

State v. Willis, Del. Supr., 673 A.2d 1233 (1995)............................................ 13

State v. Sheeran, Del. Supr., 441 A.2d 235 (1981)........................................... 13

Exparte Lange, 18 Wall. 163 (1874)............................................................ 11

Morales v. State, Del. Supr., 696 A.2d 390 (1997)........................................... 25

Commonwealth v. Hall, No. 4150 (2005)...................................................... 10

Mayes v. State, Del. Supr., 604 A.2d 839 (1992)............................................ 31

Hall v. State, Del. Supr., 473 A.2d 352 (1984)............................................... 25

State v. Cook, Del. Supr., 600 A.2d 352 (1991).............................................. 11

North Carolina v. pearce, 89 S.Ct. 2072 (1964).............................................. 11

Downs v. Jacobs, Del. Supr., 272 A.2d 706 (1970).......................................... 12

Downer v. State, 543 A.2d 309 (Del. 1988)................................................... 21

Gibbs v. State, Del. Supr., 208 A.2d 306 (1965)............................................. 25

Crosby v. State, Del. Supr., 824 A.2d 894 (2003)............................................ 25

Onely v. State, Del. Supr., 446 A.2d 389 (Del. 1988)....................................... 34

State v. Moore, 108 A.2d 673 (1954).......................................................... 29

Buckingham v. State, Del. Supr., 482 A.2d 327 (1984)..................................... 35

Key v. State, Del. Supr., 463 A.2d 633 (1983)............................................... 25

County Court v. Allen, 442 US 140 (1979).................................................... 38

ii

Exhibit B

Mullaney v. Wilbur, 421 US 684 (1975)................................................................. 38

Coleman v. Butler, 816 F.2d 1046 (5th Cir. 1987)..................................................... 38

Caldwell v. Bell, 288 F.3d 838 (6th Cir. 2002)......................................................... 38

US v. Guerra, 293 F.3d 1279 (11th Cir. 2002).......................................................... 39

Walsh v. city of Pratt, 214 F.3d 1219 (10th cir. 2000)................................................ 39

Sanstrom v. Montana, 442 US 510 (1979)............................................................... 39

Yates v. Aiken, 484 US 211 (1988)....................................................................... 38

Virgin Islands v. Parilla, 7 F.3d 1097 (3rd Cir. 1993).................................................. 38

Carella v. California, 491 US 263 (1989)................................................................. 38

Craig v. State, Del. Supr., 457 A.2d 255 (1983)........................................................ 40

Ward v. State, Del. Supr., 414 A.2d 499 (1980)........................................................ 40

Fletcher v. State, Del. Supr., 409 A.2d 1254 (1979)................................................... 40

Siple v. State, Del. Supr., 701 A.2d 79 (1997).......................................................... 40

Skinner v. Oklahoma, 316 US 535 (1942)............................................................... 42

Bailey v. State, Del. Supr., 450 A.2d 400 (1982)....................................................... 31

Osburn v. State, Del. Supr., 224 A.2d 53 (1960)....................................................... 31

Tramil v. State, Del. Supr., 425 A.2d 142 (1980)...................................................... 31

Jacob v. State, Del. Supr., 358 A.2d 725 (1976)....................................................... 31

Green v. United States, 81 S.Ct. 653 (1989)............................................................ 11

US v. Harper, 109 S.Ct. 1892............................................................................. 11

Apprendi v. New Jersey, 120 S.Ct. 2348 (2000)....................................................... 46

US v. Sabella, 272 F.2d 2636.............................................................................. 21

Capano v. State, Del. supr., 889 A.2d 968 (2006)...................................................... 46

Epstein v. Chatham Park, Inc., 153 A.2d 180 (1959).................................................. 23

Bartkus v. Illinois, 79 S.Ct. 676 (1959)................................................................. 15

US v. Lanza, 43 S.Ct. 141 (1922)........................................................................ 15

Exhibit B

Moore v. People of State of Illinois, 14 How. 13.................................................... 15

Bright v. State, 490 A.2d 564 (Del. 1985)............................................................ 18

Autrey v. chem-Trust Inductrial Corp., 362 F.Supp 1085 (D.Del. 1973)........................ 23

Commonwealth v. Dohner, 725 A.2d 822............................................................ 21

Santobello v. New York, 92 S.Ct. 495 (1977)....................................................... 20

Peavy v. US, 31 F.3d 1341 (6th Cir. 1994)........................................................... 20

US v. Harvey, 791 F.2d 294 (4th Cir. 1986)......................................................... 20

US v. Schilling, 142 F.3d 388 (7th Cir. 1998)........................................................ 20

US v. Kelly, 18 F.3d 612 (8th Cir. 1994)............................................................. 20

US v. Barron, 172 F.3d 1153 (9th cir. 1999)......................................................... 20

US v. Pielago, 135 F.3d 703 (11th Cir. 1998)........................................................ 20

US v. Gebbie, 294 F.3d 540 (3rd Cir. 2002).......................................................... 20

Commonwealth v. mathis, 464 A.2d 363............................................................. 21

Commonwealth v. Fuqua, 407 A.2d 24............................................................... 21

Statutes

11 Del.C., subsection 204............................................................................. 18

11 Del.C., subsection 206 thru 210.................................................................. 12

11 Del.C., subsection 4214........................................................................... 26

11 Del.C., subsection 4215........................................................................... 28

11 Del.C., subsection 306............................................................................ 37

18 Pa. C.S.A., section 1106.......................................................................... 21

Court Rules

Superior Court Criminal Rule 32..................................................................... 29

Exhibit B

Constitutional Provisions

Article I, Section 8 of the Delaware Constitution.................................................... 11

Article IV, Section 1 of the United States Constitution.......................................... 10

5th Amendment to the United States Constitution.................................................. 49

14th Amendment to the United States Constitution................................................. 49

8th Amendment to the United States Constitution................................................. 49

Exhibit B

## NATURE AND STAGE OF PROCEEDINGS

Appellant was arrested in culmination of a multi-jurisdiction criminal investigation by the Delaware and Pennsylvania State police Agencies involving a rash of smash and grab type burglaries of retail stores located in Delaware County Pennsylvania, and Greenville, Delaware. These stores were owned by Joseph A. Banks Clothier, a Pennsylvania corporation.

After psychiatric evaluation and findings it was determined that appellant's criminal conduct in commission of the rash of burglaries was the result of side effects of prescribed medication.

The Pennsylvania Court of Common Pleas, Delaware County, the honorable Frank T. Hazel, Commonwealth v. Hall, No. 4150 (2005) imposed sentence and entered judgment of conviction pursuant to negotiated plea agreement, which include a finding that appellant's criminal conduct charged (the rash of burglary offenses against Joseph A. Banks Clothier's retail stores in Delaware and Pennsylvania) were the result of side effects of prescribed medication, and ordered restitution to the victim, a Pennsylvania corporation, in retribution for all burglaries committed against its retail stores in both the States of Delaware, and Pennsylvania.

Surprised to learned that Delaware still had active warrants against him for the burglaries of the victims Delaware stores, appellant turned himself in for the open charges in January, 2006.

After conflicts with counsel concerning the effects of the Pennsylvania proceeding and the psychiatric findings, appellant filed a prose motion to bar a subsequent punishment for the same offenses.

1

Exhibit B

On December 1, 2006, appellant was sentenced to a term of Ten (10) years for burglary, and declared a habitual offender contrary to mitigating evidence, and appellant's double jeopardy plea against multiple-punishment.

This is appellant's direct appeal, and therein is the opening brief.

2

Exhibit B

## SUMMARY OF ARGUMENTS

**Argument I:**

"Is the Appellant entitled to Double Jeopardy Protection against Multiple Punishment when the record establishes that an order of restitution had previously been entered in the Delaware County Pennsylvania Court of Common Pleas, pursuant to plea agreement in retribution for loss suffered by the victim in appellant's Delaware Burglary Offense, charged herein, under the Full Faith and Credit Clause of the United States Constitution."

**Argument II:**

"Sentencing Appellant as a Habitual Offender in the instant case violates Procedural and Substantive Due Process of Law, establishes an Unconstitutional Conclusive or Irrebuttable Presumption of Incorrigibility, and Offends Prohibition Against Cruel and Unusual Punishment."

3


Exhibit B

## STATEMENT OF FACTS

1. Appellant was the subject of a multi-jurisdictional investigation by the Delaware and Pennsylvania State Police involving a rash of smash and grab burglaries of retail stores located in Delaware County Pennsylvania, and Greenville, Delaware. These stores were owned by Joseph A. Banks Clothier, a Pennsylvania Corporation. See arrest warrant entered as Docket No. 7, Record of the Superior Court Prothonotary.

2. Appellant was arrested on June 5, 2005, in Delaware County Pennsylvania by the Pennsylvania State Police. While in custody, appellant was interrogated by agents of both Delaware and Pennsylvania State Police. During pretrial proceedings a search warrant was executed against appellant by Pennsylvania agents to obtain blood samples from appellant for the Delaware State Police.

3. Appellant was evaluated by a forensic psychiatrist, report dated, November 22, 2005, and it was determined that he suffered severe neuro-psychiatric side effects from prescribed medication given to him in treatment for medical trauma, and that the appellant's relapse to an active addiction and subsequent commission of the rash of burglaries were directly caused by the side effects of the prescribed medication. **See Pre-sentence report and Appendix A – Transcript and sentencing Court of Common Pleas Delaware County Pennsylvania, December 12, 2005, pages 13, 14, and 15.**

4. Based on the psychiatric findings presented to the court and the prosecution, appellant negotiated a plea agreement which provided for his immediate release and for full restitution to the victim Joseph A. Banks Clothier in retribution for



Exhibit B

loss suffered in all burglaries against its establishments, including those against

the corporations' Greenville, Delaware store. This agreement, included restitution

for the victims Delaware stores, was made with appellants understanding that the

State of Delaware was not pursuing any criminal charges against him because of

the mitigating facts presented by psychiatric reports, the agreement with the

victim, and the county prosecutors' understanding being uncertain of the State of

Delaware's intent to file or pursue charges.

5. On December 12, 2005, the Honorable Frank T. Hazel, Judge of the Delaware

County Pennsylvania Court of Common Pleas imposed sentence and entered a

judgment of conviction based on a finding that appellant's charged criminal

conduct was the result of side effects of prescribed medication, and included an

order for full restitution to Joseph A. Banks Clothier, the victim for retribution of

all loses suffered by burglaries of their stores, inclusive of stores in both State of

Delaware and Pennsylvania. **See Appendix – A Transcript of Plea and**

**Sentencing Court of Common Pleas Delaware County Pennsylvania,**

**December 12, 2005, pages 13, 14, 15, and 16.**

6. After being released from Pennsylvania custody in December 2005, appellant

discovered that an outstanding warrant was active against him in the State of

Delaware, and in January 2006, appellant turned himself in on the outstanding

warrant. Appellant was charged with several counts of burglary of Joseph A.

Banks Clothier stores in Greenville, Delaware.

7. Appellant was arraigned in the Superior Court on the indictment that was issued

pursuant to Rule 9 of the Superior Court Criminal Rules.

5

Exhibit B

8. Once appellant was appointed counsel by the Public Defender's Office, a Mr. Dade Werb, Esquire, appellant immediately informed counsel of the Pennsylvania proceedings, the psychiatric findings that were adopted by the court, and the order of restitution, inclusive of Delaware burglaries for which appellant was being prosecuted. Counsel rejected any indication that the Pennsylvania proceedings had any impact on the Delaware matter, and simply presented the State's plea offers. Counsel would not file any motions suggested by the appellant.

9. On August 8, 2006, appellant entered guilty plea to two (2) counts of burglary, and agreed that he qualified by the required number of prior convictions for sentencing as a habitual offender at counsel's suggestion, with the understanding that appellant would be permitted to present the psychiatric findings and restitution entered as mitigating facts. **See Appendix – C- Plea Transcript, dated, August 8, 2006, pages 12, 13 and14.**

10. After again discussing the possible impact of the restitution order entered by the Pennsylvania court, and the court's findings that the appellant's criminal conduct was the result of the side effects of prescribed medication, feeling uncomfortable with counsel's reaction, appellant filed a prose motion to bar any further punishment by the Superior Court on the basis of its being subsequent and second punishment for the same offenses.

11. On December 1, 2006, appellant appeared in the Superior Court of New Castle County before the Honorable Peggy Ableman for sentencing. The court immediately signed an order declaring appellant a habitual offender on the basis of his omission to the prior convictions pursuant to his guilty plea without

6

$Exhibit B$

considering any mitigating information on the issue of incorrigibility. After

which counsel reviewed the pre-sentence report with the court, the report

documented appellant's substantial progress after receiving drug treatment from

1993 through 1997 in Delaware's prison based treatment programs, and his

significant achievements, including a Bachelors and masters Degree, as well as

enrollment in a Doctoral program, work and career achievements including

working in prison based treatment programs in New Jersey and Pennsylvania, and

evaluating his career track to become a recognized and accomplished clinical

supervisor in several very large programs. The record also documented that

appellant has received the recommendation of the Delaware Board of pardons for

a full pardon, pending the signature of the Governor, when he became ill

requiring emergency spinal surgery while simultaneously suffering acute

symptoms of Hepatitis C virus. The report documented that during the course of

treatment for these medical problems, appellant was prescribed both narcotic pain

medication and Interferon which produced severe side effects from the

combination of the medications, and that the side effects of the medications were

responsible for appellant's relapse into active addiction, delusions, and other

neuro-psychiatric side effects which caused the offenses for which appellant was

charged. **See Appendix – D – Sentencing Transcript, dated, December 1,**

**2006, pages 4 lines 14 through 23, pages 5, lines 1 through 22.**

**12.** After counsel presented this information, appellant was called upon to comment

pursuant to Superior Court Criminal Rule 32. It was during the course of

appellant's comments that the court blurted out that she never heard anything

7

$Exhibit B$

about the medications side effects. Appellant then attempted to present to the court, through counsel, a study from a medical journal which detailed the neurological impact of Interferon, and the particular vulnerability of patients who have a history of substance abuse, and how the medication impacts the same neurotransmitters in the brain where chemical dependency occurs and other mood disorders. The study presented detailed incidents of suicide, homicide, and othe bizarre behavior caused by the side effects of Interferon, including relapse into active addiction and overdose. **See Appendix D – Sentencing Transcript, dated, December 1, 2006, pages 5, line 23, page 6, line 1 through 23, and page 7, line 1 through 4.**

13. Without even giving the study presented a cursory review, the court discontinued appellant's opportunity to comment, showing frustration at appellant's attempt to comment on chemical dependency and relapse, stating that the court would not be lectured to by appellant about addiction, the court abruptly silenced appellant and called on Deputy Attorney General Stephen Walther for his comments and recommendation. **See Appendix D- Sentencing Transcript, dated, December 1, 2006, pages 9 through 16.**

14. Deputy Attorney General Walther jumped to his feet and emotionally screamed out that the appellant is a con-artist, and that all of the mitigating evidence presented was a con. Mr. Walther attacked letters written on appellant's behalf concerning his effectiveness in various capacities, introduced allegations of a crime that was never indicted or formally charged, and argued how appellant had been getting away for years, and finally recommending a sentence of twenty (20)

8

Exhibit B

years as a habitual offender.  Mr. Walther also commented on appellant's wearing

a suit to court and characterized his as heroin addict implying that appellant's suit

was some how a ploy against the court.  **See Appendix D – Sentencing**

**Transcript, dated, December 1, 2006, page 7 lines 5 through 23, page 8, lines**

**1 through 23, and page 9, lines 1 through 8.**

15. The court then sentenced appellant as a habitual offender and sentenced him out

side statutory maximum terms for burglary to 10 years, followed by 2 years

suspended for various lower levels of custody in transition.

Exhibit B

I.     IS THE APPELLANT ENTITLED TO DOUBLE JEOPARDY
       PROTECTION AGAINST MULTIPLE PUNISHMENT WHEN THE
       RECORD ESTALBISHES THAT AN ORDER OF RESTITUTION
       HAD PREVIOUSLY BEEN ENTERED IN THE DELAWARE
       COUNTY COURT OF COMMON PLEAS PURSUANT TO PLEA
       AGREEMENT IN RETRIBUTION AND DETERENCE FOR DAMAGES
       SUFFERED BY THE VICTIM IN APPELLANT'S DELAWARE
       BURGLARY OFFENSES UNDER THE FULL FAITH AND CREDIT
       CLAUSE OF THE UNITED STATES CONSTITUION.

### Standard and Scope of Review

Whether the Double Jeopardy Clause Prohibition against multiple punishments,
under the distinguishing facts of this case, negates the jurisdictional exception or the dual
sovereignty doctrine. Exparte Lange, 18 Wall. 163, 168, 21 L.Ed 872 (1874)

The issue raised before the court is the collateral effect of a restitution order
entered in the Court of Common Pleas, Delaware County Pennsylvania, in
Commonwealth v. Salih Hall, No. 4150 (2005), on December 12, 2005, which included
restitution for both appellant's Delaware Burglary charges represented in the instant
matter, and Pennsylvania Burglary offenses, plead to in the above cited proceeding.
Essentially, appellant argues that the circumstances surrounding the restitution order
which was part of the judgment of conviction of the Pennsylvania Court of Common
Pleas constitutes a punishment for double jeopardy purposes, subsequently barring the
second punishment imposed by the Superior Court of New Castle County on December
1, 2006, as a multiple punishment, implicating the **Full Faith and Credit Clause of
Article IV, Section 1 of the united States Constitution.**

Double Jeopardy guarantees three (3) protections. "It protects against a second
prosecution for the same offense after acquittal. It protects against a second prosecution
for the same offense after conviction. And it protects against multiple punishment for the

10

Exhibit B

same offenses. See <u>State v. Cook</u>, Del. Supr., 600 A.2d 352, 354 (1991). Quoting North

Carolina v. Pearce, 89 S.Ct. 2072 (1979). The protection against multiple punishments is

distinguishable from the other two (2) double jeopardy protections, and in fact precedes

our constitution and its later providing protection against a second prosecution after

conviction or acquittal. See <u>United States v. Halper</u>, 109 S.Ct. 1892 (1989), quoting

Exparte Lange, 18 Wall. 163, 168, 21 L.Ed 872 (1874) In <u>Halper</u> the history of the

double jeopardy clause was set forth as follows:

> "The third of these protections – the one at issue here - has deep
> roots in our history and jurisprudence. As early as 1641, the
> Colony of Massachusetts in its "Body of Liberties" stated: "No
> man shall be twise sentenced by Civill Justice for one and the same
> crime, offense, or trepasse." American Historical Documents
> 1000-1904, 43 Harvard Classics 66, 72 (c. Eliot ed. 1910). In
> drafting his initial version of what came to be our double Jeopardy
> Clause, James Madison focused explicitly on the issue of multiple
> punishments. "No person shall be subject, except in cases of
> impeachment, to more than one punishment or one trial for the
> same offence." 1 Annals of Cong. 434 (1789 – 1791) (J. Gales Ed.
> 1834) in our case law, too, this court, over a century ago, observed:
> "If there is anything settled in the jurisprudence of England and
> America, it is that no man can be twice lawfully punished for the
> same offence."

It is argued that the distinction between protection against a second prosecution

after either acquittal or conviction gave birth to the Block burger test and similar inquiries

concerning same elements, or included offenses, where as protection against multiple

punishment specifically prohibits being twice punished for the same offense. This

distinction is very significant in this appeal in the proper application of Constitutional

Law, and raises a number of serious concerns regarding legal precedent interpreting

Delaware's Double Jeopardy protection pursuant to <u>Article I, Section 8 of the Delaware</u>

11

$\mathcal{E}\times h(b/t \mathcal{R}$

Constitution, and the statutory provisions codified at 11 Del.C., subsection 206 through 210. relating to the facts of this case.

According to precedent in Delaware's system of jurisprudence, the court must first apply Delaware's statutes when resolving a double jeopardy issue and need only consider the State and Federal Constitutional Double Jeopardy provisions when it appears that the issue is not covered by the Delaware statutory scheme or that application of the statue will violate a State or Federal Constitutional provision. See Downs v. Jacob, Del. Supr., 272 A.2d 706 (1970).

As previously stated, Double Jeopardy protection in Delaware is codified at 11 Del.C., subsection 206 through 210. However, appellant argues that the issues presented herein are indeed novel, and of first impression, which is not contemplated by the Delaware statutory scheme. The statutory scheme expressly provides protection against both provisions of a second prosecution, and do not contemplate multiple punishment for offenses by two States, when the offenses are the same, and do not evolve elements or mere statutorily defined offenses chargeable for a course of conduct, or issues of lesser included offense. Therefore, appellant relies upon the Double Jeopardy protection against multiple punishments not expressly provided for by Delaware statutes, but inherent in the United States Constitution.

Having detailed the distinction between double jeopardy protections available by the United States Constitution, the issue framed before the court for review is whether a negotiated plea agreement entered into before the Delaware County Pennsylvania Court of Common Pleas on December 12, 2005, which included an order of restitution for both Pennsylvania and Delaware burglaries against Joseph A. Bank Clothier's retail stores, is



punishment within the meaning of the protection afforded by the Double Jeopardy Clauses prohibition against multiple punishment for the same offenses. There is not question that the restitution order entered in Pennsylvania was for the same offenses for which the Superior Court of State of Delaware, New Castle County, subsequently imposed a second punishment on December 1, 2006. Joseph A. Banks Clothier is a Pennsylvania Corporation with some six (6) retail stores in the State of Pennsylvania, on of those subject of burglary, and one (1) single location also subject of burglary in the State of Delaware at 4001 Kenneth Pike, Greenville, Delaware. The question of the Pennsylvania Court's jurisdiction to impose restitution for burglaries occurring in the State of Delaware becomes the focal point of this inquiry.

There are two (2) separate provisions and resulting case law central to this inquiry. The first is the "jurisdictional exception to double jeopardy protection. See State v. Willis, Del. Supr., 673 A.2d 1233 (1995); State v. Sheeran, Del. Super., 441 A.2d 235 (1981). The second is the Dual Sovereignty Doctrine. See Petition of Hovey, 545 A.2d 626. However, appellant asserts that these "jurisdictional exceptions" to double jeopardy protection have here limits, and only provide exception under the first two (2) double jeopardy protections, and are not applicable to constitutional protection against multiple punishment, the third protection. As multiple punishments protection under the third prong of protection only and exclusively prohibits a second punishment for the "same offense." This is the distinguishing feature of the third prong of protection, protection against multiple punishments. There can be no exception to prohibition for a second punishment for the exact "same offense."

13

$Exhibit B$

Under the "jurisdictional exception" to double jeopardy protection, jeopardy does not attach to a greater offense when the lesser charge is adjudicated in a court with no final jurisdiction over the greater charge. Therefore, the "jurisdictional exception" is predicated on the concept of former jeopardy of included offenses, and do not provide exception when the "same offense" is at issue. In Willis, Del Supr., the State considered this "jurisdictional exception" one of the "few exceptions to the Block burger test." The exception actually provided for "expanded" portion of statutory definition of "included offenses." This is the rationale on which it is argued that provisions of 11 Del.C., subsection 206 thru 210 are inapplicable under the facts of this case. This appeal does not involve "included offenses," but the "same offense." The operative component distinguishing the first punishment is the contractual nature of a negotiated plea agreement providing for imposition of a criminal sanction for burglary offenses committed in Delaware, while being prosecuted in a Pennsylvania Court. Therefore, the fact of this case involving the "same offense" is outside the scope of the included offense rationale.

Once again, in order to overcome the "jurisdictional exception" to the double jeopardy clause, the threshold inquiry is did the Pennsylvania Court have jurisdiction to enter such an order of restitution by way of negotiated plea agreement, and whether the sanction imposed was punishment for the same offenses within the meaning of double jeopardy protection, to the extent that the State of Delaware is barred from imposing a second or subsequent punishment. Under these facts the separateness of sovereignty is not relevant because the sanction imposed was for the Delaware burglaries, the identically same offense and not included offenses.

14

Exhibit B

Under applicable standards governing issues of Double Jeopardy pursuant to the United States Constitution, the decisions of the United States Supreme Court have consistently recognized the principle that each jurisdiction may prosecute and punish violations of the law of that jurisdiction under the Dual Sovereignty Doctrine. See Bartkus v. Illinois, 359 US 2=121, 79 S.Ct. 676, 3 L.Ed. 2d 684 (1959); rehearing denied 360 US 907, 79 S.Ct. 1283, 3 L.Ed.2d 729 (1959); United States v. Lanza, 260 US 377, 43 S.Ct. 141, 67 L.Ed 314 (1922). Under the principle that each jurisdiction may prosecute and punish violations of its own laws, if the conduct of a person constitutes a violation of the laws of more than one jurisdiction, each jurisdiction may successively prosecute the violation. This rationale is outlined in State v. Sheeran, Del. Supr., 441 A.2d 235 (1981):

Both United States v. Lanza, 260 US 377, 43 S.Ct 141, 67 L.Ed 314 (1922); and Bartkus v. Illinois, 359 US 121, 79 S.Ct 676, 3 L.Ed 2d 684 (1959), establish a line of case law asserting the dual sovereignty exception to the double jeopardy clause. However, these cases simply proceed from the premise laid down in Moore v. People of State of Illinois, 14 How. 13, 14 L.Ed 306, which appellant submits is the foundation on the doctrine.

Mr. Justice Grier, writing for the court in Moore v. People of State of Illinois, gave definite statement to the rule which had been evolving:

> "An offense, in its legal signification means the transgression of a law." 14 How. At page 19.

> "every citizen of the united States is also a citizen of a State or Territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both." 14 How. At page 20.

15

Exhibit B

> "That either or both may (if they see fit) punish such an offender,
> Cannot be doubted. Yet it can not be truly averred that the offender
> has been twice punished for the same offense; but only that by one
> act he has committed two offenses, for each of which he is justly
> punishable. He could not plead the punishment by one in bar to a
> conviction by the other." Ibid.

The tell tail phrase leading to insight into the underlying rationale of the Moore
Court, and therefore echoing down through Bartkus v. Illinois in the United States
Supreme Court, and the Petition of Hovey, Del. Supr., is this one:

> "Yet it can not be truly averred that the offender has been twice
> punished for the same offense; but only by one act he has committed
> two offenses, each of which he is justly punishable."

The High Court's emphasis was on the premise of providing for the broadening of
included offenses for a criminal act, not on condoning multiple punishments.

Once again, the facts of this case are distinguishable from historical line of
decisions in which dual jurisdictional doctrine have found application. In this case, a
criminal sanction has been imposed on a previous occasion by way of negotiated plea
agreement in a Pennsylvania Court for offenses committed in the State of Delaware. It is
the same victim in all offenses committed in both jurisdictions. The appellant entered his
plea agreement in the Delaware County Pennsylvania Court of Common Pleas, where tat
court has subject matter jurisdiction, and jurisdiction over the person of appellant due to
his custody. This case does not involve issues of former prosecution, but principles of
multiple punishments, the third prong of Double Jeopardy protection. Further, the criminal
sanction of restitution was imposed against the exact same offenses which were later
prosecuted in Delaware, resulting in imposition of a second punishment. Both criminal
sanctions and punishments were imposed for burglaries committed against the retail store
of Joseph A. Banks Clothier located at 4001 Kennett Pike, Greenville, Delaware. The case

16

Exhibit B

at bar does not involve any question of the identity of the offenses in the successive prosecution, and therefore do not implicate theories involving cases when the same act may constitute two (2) offenses such as been decided in Block Burger v. United States, 281 US 299, 52 S.Ct. 180, 76 L.Ed 306, or the line of Delaware cases following the same rationale. State v. Norris, Del. Gen. Sess. 73 A.2d 790 (1950); State v. Simmons Del. Super., 99 A.2d 401 (1953). Nor is this case deposed of by the rationale of State v. Heitter, Del. Supr., 203 A.2d 69 (1964), when the court departed from the traditional test of Norris and Simmons once again addressing the first two (2) prongs of Double Jeopardy protection against former prosecution.

This case involves virgin ground for the review of Double Jeopardy protection, involving the distinguishable protection against multiple punishment for the same offenses as prohibited by the third prong of the Constitutional protection, and negotiated plea bargaining and the authority of an out of State Court in the unique context of this case. Appellant argues that the Pennsylvania Court had jurisdiction to issue the order of restitution at the center of this litigation by way of plea agreement, and that the resulting judgment entered is entitled to Double Jeopardy protection and is enforceable pursuant to Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution. Not in the context of the agreement becoming binding upon the State of Delaware per se as some sort of multi-jurisdictional agreement, but instead due to the enforceability of the judgment as being duly recognized in the State of Delaware. The full faith and Credit Clause necessitates that the State of Delaware recognized the previously entered criminal sanction imposed by the Pennsylvania Court as a valid and enforceable judgment.

17

$Exhibit$ R

To appreciate the unique circumstances of the plea agreement entered in to and herein relied upon, the facts leading up to the negotiated plea agreement, and understanding of the parties entering into the agreement, deserve some review.

The initial arrest warrant issued in this matter on the Superior Court docket indicates that the Delaware and Pennsylvania State Police Departments engaged in a joint or multi-jurisdictional investigation of a rash of burglaries against two (2) Joseph A. Banks Clothier retail stores over a 60 day period. One of these stores were located at the Glen Eagle Shopping Center on Route 202 in Delaware County Pennsylvania, and the other at 4001 Kenneth Pike, Greenville, Delaware. The multi-jurisdictional cooperation is authorized by compact between the States codified at 11 Del.C., subsection 204 and 2736. On June 4, 2005, appellant was arrested in Delaware County Pennsylvania by the Pennsylvania State Police in connection with this rash of burglaries. The State of Pennsylvania became the lead investigative agency in the multi-jurisdictional investigation due to the fact that the bulk of the burglaries being committed against the victims establishments occurred in the State of Pennsylvania, appellant was initially arrested in the Keystone State and Joseph A. Banks Clothier is a Pennsylvania Corporation whose stores were the subject of the burglaries. 11 Del.C., subsection 204 was enacted to expand territorial criminal jurisdiction to provide multiple states who may be subjects of criminal conspiracy involving criminal activity perpetrated in either State the benefit of expanded jurisdiction to prosecute acts done outside a jurisdiction. See Bright v. State, 490 A.2d 564 (Del. 1985). Because of these facts and others involving cooperation between the Pennsylvania and Delaware State Police agencies, appellant formed the impression that the Pennsylvania authorities were acting as agent of the State of Delaware. (Particularly the

18

$Exhibit$ $B$

language of arrest warrants, police interrogations and collections of evidence for the State of Delaware through Pennsylvania authorities)

Before the plea hearing in Pennsylvania Court of Common Pleas, appellant was informed by counsel, off the record and in the Bull Pen before entering the courtroom, that the State of Delaware was not pursuing any charges against him. On this premise, appellant moved to resolve any harm caused the victim, Joseph A. Banks Clothier, and sought to resolve all claims between him and the victim, by including full restitution for both the Delaware and Pennsylvania burglaries as a part of the plea agreement. The record of the plea hearing demonstrates that the County prosecutor was uncertain of whether Delaware intended to independently prosecute appellant for offenses committed in its jurisdiction, and it is apparent that it was equally uncertain what the impact of the restitution order for the Delaware offenses would have in the event Delaware actually did prosecute. These facts, along with the psychiatric report presented to the Pennsylvania Court, establishes the understanding of the parties regarding the agreement. The psychiatric report indicated that appellant's relapse into active addiction after substantial recovery was the result of neuro-psychiatric side effects of prescribed medication. The court ultimately adopted the psychiatric findings into the final judgment and sentence. Once again, these facts framed the understanding of the parties in the plea negotiation resulting in what constitutes the initial sanction imposed in Pennsylvania which ought to bar the second sanction imposed by the Superior Court of New Castle County, Delaware, on December 1, 2006. The criminal sanction, including the order of restitution for the Delaware burglaries were an element of the negotiated plea bargain that found appellant's criminal conduct was the result of side effects of prescribed medication.

19


Exhibit R

Plea agreements are construed according to the law of contracts. See Santobello v. New York, 404 US 257, 92 S.Ct 495, 30 L.Ed. 2d 427 (1977). Also se e.g., Peavy v. US, 31 F.3rd 1341, 1346 (6th Cir. 1994); US v. Harvey, 791 F.2d 294, 301 4th Cir. 1986); US v. Schilling, 142 F.3d 388, 394 (7th Cir. 1998); US v. Kelly, 18 F.3d 612, 616 (8th Cir. 1994); US v. Barron, 172 F.3d 1153, 1158 (9th Cir. 1999); US v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998). Due process requires that any ambiguity be construed against the government and in accordance with the defendant's reasonable understanding of the agreement. See US v. Gebbie, 294 F.3d 540, 552 (3rd Cir. 2002). The appellant's understanding of the terms are clear and expressed, as well as the ambiguity of the prosecution. The Pennsylvania prosecuting authorities did not know for certain whether Delaware intended to prosecute the appellant, nor did they know the impact of the restitution order, or indicate any communication with Delaware authorities when the prosecution originated as a multi-jurisdictional investigation in to a rash of burglaries also involving the State of Delaware.

Under the circumstances of this case it is not relevant whether the plea agreement is in any way binding on the State of Delaware per se. this is not the focus of appellant's argument. The relevant fact is the jurisdiction of the Delaware County Pennsylvania Court of Common Pleas to order the restitution for the victims Delaware store by way of negotiated plea agreement under the circumstances. The order of restitution for the victims Delaware store is evidently a criminal sanction for the same offenses ultimately and subsequently prosecuted in this instant matter. The restitution was for retribution resulting from burglaries of the victims' stores, including the one located at 4001 Kennet Pike, Greenville, Delaware. The restitution order in Pennsylvania constitutes a criminal

Exhibit B

sanction for the same offenses charged in this State, thus being barred as a second criminal sanction in the State of Delaware. This matter does not involve different offenses with different elements arising from the same transaction, or for offenses committed in both jurisdictions through conspiracy. It is in fact the same identical offenses. Although restitution is not a sentence of incarceration, it is never the less a criminal sanction. Restitution is a punishment by any definition of the term. Like the State of Delaware, Pennsylvania considers restitution an approved criminal sanction included in sentencing options. See 18 Pa. C.S.A., section 1106, Commonwealth v. Mathis, 464 A.2d 362, Commonwealth v. Fuqua, 407 A. 2d 24; Commonwealth v. Dohner, 725 A.2d 822.

It is asserted that the Pennsylvania Court of Common Pleas had jurisdiction to impose the restitution order for burglaries committed by appellant against Joseph A. Banks Clothier's Greenville Delaware store by virtue of the negotiated plea agreement. Therefore, the judgment of conviction entered by that court on December 12, 2005, was legally within the Pennsylvania court's jurisdiction. On the other hand, for arguments purposes, a valid judgment of conviction may be sufficient to sustain a plea of former jeopardy even though the court imposed a penalty or sentence which it is without power to impose. See US v. Sabella, 272 F.2d 2636. Plea agreements, being in essence a matter of contract law operating within the purview of criminal jurisprudence, permit the parties to supersede normal parameters imposed by criminal procedure, including jurisdictional limitations. Under a plea bargain agreement a defendant can enter guilty pleas to defective or non-existent offenses, or upon premises eventually held to be faulty. See Downer v. State, 543 A.2d 309 (Del. 1988)

Exhibit B

In Downer, this court found that:

> "Where defendant's conduct has brought him within jurisdiction of the court to answer state's allegation of criminal activity and these allegations result in plea bargaining, court's jurisdiction is not lost simply because result of bargaining is a plea to a non- existent offense. Error is curable and fundamental authority of court to accept result of defendant's bargain with the State remains intact."

The premise applicable to plea agreements being contractual in nature should equally apply in the determination of whether a Pennsylvania court can gain jurisdiction to enter restitution for burglaries committed against the same victim for which a part of the criminal transaction involving a rash of burglaries are being prosecuted, when that court has both subject matter jurisdiction, and jurisdiction over the person of appellant for related offenses. Considering the vast body of law establishing plea bargaining as being governed by contract principles, and the principles of agreement superseding normal limitations of criminal procedure, appellant asserts that the restitution order was entered by a court of competent jurisdiction, and that the Pennsylvania Court's jurisdiction is not subject to re-litigation in a Delaware Court. It follows that the sanction imposed is valid as a matter of law and practice.

Since the Pennsylvania Court of Common Pleas had jurisdiction to order restitution for the Delaware burglaries by way of plea bargain, appellant now asserts that Delaware is bond to recognize the judgment of conviction of said Pennsylvania Court pursuant to the Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution. Pursuant to Article IV, Section 1, the State of Delaware is forced to recognize the judgment of the Pennsylvania Court as a valid judgment, and therefore a previously entered criminal sanction making the First State's attempt to impose a sanction for burglaries committed against Joseph A. Banks Clothier's Greenville,

22

Exhibit B

Delaware store a second punishment prohibited by the third prong of double Jeopardy

protection. See North Carolina v. Pearce, 395 US 711, 717, 89 S.Ct 2072, 2076, 23 L.Ed

2d 656 (1969).

Judgment under Full Faith and Credit will be given effect in all states as given in

rendering state. The provision requires every state to give to the judgments of another

state, assuming jurisdiction by the state entering the judgment over the parties and subject

matter, the same effect which that judgment has in the state in which it was rendered.

Eptein v. Chatham Park, Inc., 153 A.2d 180 (1959); Autrey v. Chem-Trust Industrial

Corp., 362 F. Supp. 1085 (D.Del. 1973).

Appellant submits that his plea agreement in the Pennsylvania Court of Common

Pleas, being in essence a contract, providing said court jurisdiction to enter restitution for

the burglaries committed in the victims Delaware store. Appellant is in no way

responsible for any lack of communication between Pennsylvania and Delaware

prosecuting authorities with respect to the effects of the restitution order or intent to

prosecute. It is evident, however, that appellant's intent was to resolve all claims

between himself and the victim pertaining to all burglaries for which he was charged due

to the side effects of the medication prescribed him, the Delaware County Pennsylvania

prosecutor's understanding of the impact of the restitution was clearly ambiguous, yet

without speaking to any Delaware authorities, entered into the plea agreement. Thus,

according to establish law the understanding of the agreement must be weighed in

appellant's favor.

Having established that Pennsylvania Court had jurisdiction to accept the plea

agreement, and entered the order of restitution on December 12, 2005, the Pennsylvania

23


Exhibit B

Court imposed a criminal sanction on Appellant. Since the Pennsylvania court had jurisdiction to impose the sanction, the subsequent criminal sanction imposed by the Superior Court of the State of Delaware becomes a second punishment for the same offenses of 10 years level V under declaration of habitual offender statutes becomes a second punishment for the same offenses contrary to both state and federal constitutional prohibitions against multiple punishment. The find of habitual offender status is also contrary to the Pennsylvania court's finds that appellant's criminal conduct was the result of side effects of prescribed medication which was the entered judgment of that court enforceable under the Full Faith and Credit Clause.

Appellant is then entitled to be discharged from the second sanction imposed pursuant to the Double Jeopardy prohibition against multiple punishments.

Exhibit R

II.    "SENTENCING APPELLANT AS A HABITUAL OFFENDER IN THE INSTANT CASE VIOLATES SUBSTANTIVE AND PROCEDURAL DUE PROCESS, ESTABLISHES AN UNCONSTITUTIONAL CONCLUSIVE PRESUMPTION ON INCORRIGIBILITY, AND OFFENDS PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENTS."

Standard and Scope of Review

Whether Delaware habitual Offender Status and procedural failed to comport with due process of law. Key v. State, Del. Supr., 463 A.2d 633 (1983). Establish conclusive presumptions contrary to 11 Del.C., subsection 306, and abridge prohibition against cruel and unusual punishment. Crosby v. State, Del. Supr., 824 A.2d 894 (2003).

INTRODUCTION

Appellant presents the substance of all Three (3) components of the following argument as important issues of substantive law that ought to be decided by the Delaware Supreme Court. Previous decisions of the court pertaining to the legislative purpose and intent for the enactment of habitual offender statutes have been found as the creation of a status which is "to separate civilized society from individuals who have demonstrated their incorrigibility by repeatedly being incarcerated, released, and convicted of subsequent criminal offenses." See Hall v. State, Del. Supr., 473 A.2d 352, 356 (1984). The habitual offender statute has been determined to be a legislative scheme that can result in the establishment of a status. Gibbs v. State, Del. Supr., 208 A.2d 306, 308 (1965) An affirmative determination that an individual has qualified for "habitual criminal" status permits the imposition of an enhanced punishment, which may exceed the statutory range of sentences for the predicated or triggering conviction. See Morales v. State, Del. Supr., 696 A.2d 390, 394 (1997). The provision creates a status which can justify complete banishment from civilized society through the extreme penalty of life in

25

Exhibit B

prison. See 11 Del.C., subsection 4214(a), and 4214(b). Thus, the procedure involves more then a simple enhancement of punishment on the basis of previous conviction, but implicates a legal status which amounts to substantial previous loss predicated completely on a factual finding of incorrigibility. As such a finding, designation of status, and punishment is the expressed aim of the statue. **All of this being considered, limited arguments involving enhanced penalty are misplaced when reviewing procedural rights that must be afforded under the statute.**

Up to this point in the history of judicial review of the habitual offender statutes in Delaware, like in the case of any other simple enhancement statute, the only finding necessary to trigger the status and associated enhancement statute has been proof of the requisite number of prior convictions. The factual issue of incorrigibility has been avoided or ignored. Only the enhancement feature of procedure requirements have been focused on by the courts which is a major issue of Constitutional proportion.

First, it si argued that appellant's sentencing under habitual offender statutes, particularly on the record of this case, is contrary to the expressed legislative intent in the enactment of the act which requires a finding of incorrigibility. Second, it is the limited inquiry of the statute that appellant argues offends due process because it establishes an irrebuttable or conclusive presumption of incorrigibility on the fact of previous convictions alone, when many other facts are clearly relevant to such a finding that triggers the extreme imposition of penalty and status so that the statute may comport with fundamental due process. Third, and particularly in light of the facts of record in this case, and current realities of our society when chemical dependency and mental health issues are involved, modern scientific advances would require a determination of the

26

Exhibit B

impact of such brain disorders on the issue of incorrigibility under involving standards of decency. To foreclose inquiry into such relevant circumstances amounts to an arbitrary and unreasonable result which of itself offenders due process.

Appellant, herein presents a unique set of circumstances which are obviously relevant to the inquiry regarding the ultimate question of incorrigibility. Such factual record also sheds light on the harm that the limited statutory requirements of proof of prior conviction alone invokes, when many other important facts need to be reviewed to properly reach a finding of incorrigibility that results in such an extreme status as that of habitual offender. The consequences of current procedure has historically resulted in the obsurd outcome of imprisoning individuals who's criminal offenses are mere property crimes committed because of untreated addiction, or resulting from mental health problems, for which no real treatment opportunity has ever been had or required. There are currently hundreds of inmates in our correctional system serving a variety of enhanced sentences under habitual offender statutes ranging up to life without parole, who are in fact victims of a variety of untreated brain disorders, who have been arbitrarily declared habitual offenders after repeat incarcerations, but who have never received appropriate diagnosis or treatment. These individuals, including appellant, have simply been discarded by the system, because of poverty and other socio- economic and political factors. All such sentencing practices as outlined here are contrary to this court's ruling in Crosby v. State, Del. Supr., 824 A.2d 894 (2003), when the court outlined three (3) factors when reviewing habitual offender sentences in the context of a claim of cruel and unusual punishment.



Exhibit R

Under the Three (3) factors standard in Crosby, supr., the factual record in this case will establish that appellant, after obtaining substance abuse treatment in a prison-based therapeutic community, experienced a well documented period of recovery of over Seven (7) years, evidenced substantial educational progress by way of a masters degree, and social adjustment, before relapsing back into an active addiction, subsequently committing new offenses which have been found to be the direct cause of side effects of prescribed medical treatment following medical trauma. Even with all of these facts being presented by the record, the appellant was labeled a con-artist, and all of his documented recovery labeled a con, resulting in the court quickly justifying declaration of habitual offender status, and imposition of an enhanced sentence under the habitual offender statute because of his prior criminal history which was admitted pursuant to a plea agreement. It is the factual record pertaining to the side effects of the prescribed medication documented in this case that should be a consideration under procedural and substantive due process that should be constitutionally require to be afforded by provisions of 11 Del.C., subsection 4214 and it's companion procedural statute 11 Del.C., 4215. It is argued that the manner in which, and the fact that such relevant facts, were excluded under current procedure in the findings involved in application of the statute, specifically a finding of incorrigibility, on the basis of the simple historical fact of the number of prior convictions is to establish a conclusive or irrebuttable presumption of incorrigibility contrary to both procedural and substantive due process protection afforded by the United States Constitution, and provisions of the Delaware Constitution, as well as going against the legislative intent to employ habitual offender statutes only against those found to be incorrigible.

28

Exhibit B

### A.    THE SUPERIOR COURT FAILED TO BE OPENMINDED TO MITIGATING FACTS PRESENTED BY APPELLANT AT SENTENCING.

In the instant case, appellant submits that the record will show that the Superior Court's failure to be open to information in mitigation of his sentence amounts to a violation of procedural and substantive due process in violation of the express provisions of Superior Court Criminal Rule 32. The Superior Court, pursuant to Superior Court Criminal Rule 32(a) was obligated to consider any factor important to the sentencing determination, even if the same required postponement of the proceeding for a reasonable time until the fact is capable of being resolved. See Superior Court Criminal Rule 32(a).

At sentencing, the appellant presented evidence of Seven (7) years of sobriety and recovery following a prison-based treatment opportunity supported and documented by the pre-sentence report, and by documented proceedings before the Delaware Board of Pardons. Further evidence in the pre-sentence report, through psychiatric report, was presented in the record appellant suffered side effects of prescribed medication that was the proximate cause of appellant's relapse into active addiction and resultant criminal conduct forming the charged offenses. It is well established that evidence of appellant character and life is essential of sentencing. See State v. Moore, 108 A.2d 675 (1954). Thus, significance of the pre-sentence investigation and report is no longer in doubt in Delaware, and carries substantial evidentiary weight. State v. Moore, 108 A.2d 675 (1954).

The pre-sentence report has been given such weight in Delaware's sentencing scheme that Superior Court Criminal Rule 32(c)(3) mandated that if a factual inaccuracy in the report is alleged, the court then must proceed to a hearing and establish findings to

29

Exhibit B

determine whether matters of controversy will be taken into account in imposing sentence.

Superior Court Criminal Rule 32(c)(3) is worded in pertinent part as follows:

> "The court shall afford the parties an opportunity to comment on the report and in the discretion of the court, to present information relating to any alleged factual inaccuracy contained in it. If the comments or information presented allege any factual inaccuracy in the pre-sentence investigation report, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing."

The record of this case will clearly demonstrate that the State's Attorney brought the entire pre-sentence report into controversy when he claimed that the appellant was a con-artist, and that the evidence presented in the pre-sentence report was a con when contesting the appellant's documented period of recovery, and findings of Dr. Mechanick in mitigation of sentencing. Particularly in light of the legal status of the pre-sentence report and the requirements of Superior Court Criminal Rule 32(c)(3). See State v. Moore, 108 A.2d 675 (1954). It would appear that Superior Court Criminal Rule 32 would at least require the court to establish findings to negate the pre-sentence report in the record of the case before adopting the state's unsupported proposition that he material presented in the pre-sentence report was the result of a con. Particularly when the information presented had been previously adopted by the Delaware Board of Pardon, forming the basis of a recommendation for full pardon, and by the Court of Common Pleas in Delaware County Pennsylvania.[1]

---

[1] Reference is here made to argument I that asserts the Pennsylvania Court of Common Pleas judgment of conviction under the Full Faith and Credit Clause of the United State Constitution, Article IV, Section 1.

30

Exhibit B

However, the Superior Court acquiesced with the state and imposed sentence under the habitual offender statute to a Ten (10) year term, above and beyond the statutory maximum sentence allowed. The appellant argues that the court committed error when the record did not reflect evidence of the court's determination. It is the Rule of law in Delaware that the court's determination for sentencing as a habitual offender must be supported by substantial evidence in the record and be free from legal error and abuse of discretion. Morales v. State, Del. Supr., 696 A.2d 390 (1997).

The Supreme Court does have appellant jurisdiction to review criminal sentences on the basis of alleged: unconstitutionality, factual predicates which are either false, impermissible, or lack minimum indicia of reliability; judicial vindictiveness, bias, or sentencing with a "closed mind;" and any other illegality. Appellant relies upon Siple v. State, Del. Supr., 701 A.2d 79 (1997), supporting this established rule of law in Delaware, citing Morales v. State, Del. Supr., 696 A.2d 390, 394 (1997); Mayes v. State, Del. Supr., 604 A.2d 839, 842-43 (1992); Hall v. State, Del. Supr., 473 A.2d 352 (1984); Bailey v. State, Del. Supr., 450 A.2d 400, 406 (1982) QUOTING Osburn v. State, Del. Supr., 224 A.2d 53 (1966); Tramill v. State, Del. Supr., 425 A.2d 142, 145 (1980); Jacob v. State, Del. Supr., 358 A.2d 725, 729-30 (1976).

Appellant argues that the State's position that the pre-sentence report findings were in accurate and a con, when reviewed against the record, amount to factual predicates which are either outright false, or lacking minimum indicia of reliability, and for the Superior Court to adopt such a position over the record, and impose an aggravated sentence, without first establishing findings to support such a position amounts to abuse

---

The Pennsylvania Court found that appellant's relapse and criminal conduct were in fact the result of side effects of prescribed medication, adopting Dr. Mechanick's Psychiatric report.

31
Exhibit B

of discretion, and is contrary to the provision of Superior Court Criminal Rule 32(c)(3), and principles of fundamental fairness established by due process of law. The appellant argues that these facts alone present a strong basis for reversal and re-sentencing . However, the record will further demonstrate on appeal that the Superior Court abused its discretion further, when the court acknowledged a lack of knowledge regarding the side effects of a medication known as interferon prescribed for treatment of Hepatitis C virus, when such medications' side effects represented the center pin of mitigating facts set forth in the pre-sentence report, and presented by the appellant, and when a bone fide medical journal article to the court which would enlighten its understanding of how effects complained of brought about his relapse and resulting criminal behavior charged, through counsel, and the court did not acknowledge the study, review it, or even consider it after stating a lack of understanding. Instead, the court opting to adopt the State's emotional appeal without any evidentiary basis. The record will reflect, even after admitting a lack of understanding of the mitigating facts, the court had a "closed mind" to medical information supporting the mitigating facts presented in the pre-sentence report, and by the appellant, personally, and through counsel. These actions by the court constitute a clear violation of the intent, purpose and spirit of Superior Court Criminal Rule 32(a) which requires, by necessary implication, that before finally reaching a decision as to sentence the judge have an open mind at least to the extent of receiving all information bearing on the question of mitigation. See Bailey v. State, Del. Supr., 450 A.2d page 406 (1982); citing Green v. United States, 81 S.Ct. 653. Also see Osburn v. State, 224 A.2d 52 (Del. 1966). The transcript reflects the court's being provided the mentioned study, and subsequent disregard for the information by failure to review it

Exhibit B

before imposing sentence when the information was relevant to mitigating facts being presented by appellant.

It is for these reasons, and upon the factual record of this case that relief should be granted.

## B.    THE    SUPERIOR    COURT'S    DECLARATION    OF APPELLANT    AS A HABITUAL OFFENDER WAS CONTRARY TO THE LEGISLATIVE INTENT

Current understanding of chemical dependency, the new scientific and medical term replacing addiction, presents a challenging set of circumstances to be evaluated in the equitation keeping with the legislative intent of the enactment of habitual offender statutes in Delaware. Presenting questions never squarely addressed by the court when determining what is required in order to legally find that a criminal defendant with a history of chemical dependency has had a "chance for reform." For even the addiction treatment community has adjusted outcome expectation to reflect the reality of relapse in light of recent advances in knowledge regarding intricacies of the brain disease of chemical dependency, advances in neurological mapping of the disease centers in the brain, and neuro-chemical processes involved. Current treatment outcome expectation anticipate the probability of relapse before successful recovery is possible, and scientific evidence is also abundant tying crime and addiction to the extent that patterns of criminal behavior associated with addiction history as considered a natural aspect of relapse for individuals with such historic patterns. However, advances in medical knowledge has lead to innovations in treatment approaches and modalities resulting in a much greater variety of effective treatment approaches and modalities resulting in a much greater

33

Exhibit B

variety of effective treatment options available.   Squarely put a mere period of incarceration of itself can not be argued in the face of modern medical knowledge to the disease to provide a meaningful "chance for reform.[2]" This issue is further complicated by the cut backs in prison-based treatment programs in the State, and practices that have undermined existing programs. Therefore, when addressing chemical dependency issues the current view of a "chance for reform" is inadequate and antiquated to say the least, and perhaps even implicates cruel and unusual punishment in the application of habitual offender status upon this class of defendant.   See Crosby v. State, Del supr., 824 A.2d 894 (2003), for implications of cruel and unusual punishment.

It is argued by appellant, that even though he may have had the requisite number of prior convictions, and even acknowledged eligibility for declaration of habitual offender, that a positive response to treatment can not be ignored in determining the appropriate sentence to be imposed. Particularly, when the record establishes facts that indicate that his relapse and subsequent new offenses were caused by medical  trauma and side effects of prescribed medication, specifically in light of the fact that previous treatment opportunities have been limited within the Department of Corrections before recent times.   The question then arises, can such a factual record be construed to constitute incorrigibility for which the statue is designed and intended to protect against and not offend due process.  See Hall v. State, Del. Supr., 473 A.2d 352, 356 (1984).

The pre-sentence report may be submitted to the court and it's contents disclosed where defendant has plead guilty or has been found guilty.  Onely v. State, 446 A.2d 389

---

[2] Modern medical knowledge would require the overturn of Eaddy v. State, Del. Supr., 679 A.2d 669 (1996) as being contrary to the realty of chemical dependency and its powerful impact on brain chemistry that is for life, with relapse possible at anytime. Under this view incarceration alone can hardly be considered a "chance for reform."

34

$Exhibit$ B

(Del. 1988). Defendant reviewed the report in this case along with counsel, and the report established on the record that appellant's relapse into addiction and his subsequent criminal offenses, were the result of side effects of prescribed medication, after substantial documented recovery following prison-based treatment. The pre-sentence report is part of the factual record on which the court determines appropriate sentence as "information has taken the place of intuition in this area of criminal jurisprudence. See State v. Moore, 108 A.2d 675 (1954). The record in this case establishes a factual basis that appellant availed himself of his treatment opportunity following his previous conviction, and that his subsequent relapse and new offenses were the documented result of acute medical problems and side effects of medication prescribed to treat his medical dilemma.    Such a record can not arguably support a finding that the appellant is incorrigible in light of medical knowledge regarding chemical dependency. The statute requires that there has to have been some chance for rehabilitation, that by implication, appellant failed to avail himself of before the status of habitual offender can be consistently applied keeping with the legislative intent behind the enactment of the act. See Buckingham v. State, Del.Supr., 482 A.2d 327 (1984). It is in this context that the process due, in reaching a finding of incorrigibility, should provide an ample procedure in which evidence may be weighed in determining application of the habitual offender statute 11 Del.C., subsection 4214, beyond mere history of convictions.    Although appellant entered a guilty plea which acknowledged his previous convictions, he should have been entitled to the due process which should have included the opportunity to offer evidence of his own. Otherwise he should have been advised that his plea acted as a waiver of these important rights. Absent this his plea would be not intelligently waived.

35



Exhibit B

Appellant's treatment experience and outcome, and reasons for relapse and commission
of new offenses are equally as relevant as proof of the requisite number of convictions to
determine incorrigibility. Not simply the proof that appellant had the required number of
previous convictions to qualify for habitual offender status should suffice alone when
contrary evidence is present in the record that establishes some level of rehabilitation and
substantial mitigating facts at root of his relapse and new offenses. (See argument II(a)
concerning judicial closed mindedness at sentencing.)

A determination by the trial court that a defendant is an "habitual offender" must
be supported substantial evidence in the record and be free from legal error and abuse of
discretion. See Morales v. State, Del. Supr., 696 A.2d 390 (1997). However, and unlike
any other previous case before the Supreme Court, the pre-sentence report establishes
that appellant benefited substantially from his prison-based treatment. He remained clean
and sober for seven years, advanced in education unto a master degree. In fact, the
record will demonstrate that appellant was enrolled as a doctoral student when impacted
by medical trauma. The appellant went on to be employed himself in prison-based
therapeutic community treatment modalities in the State of New Jersey and Pennsylvania,
being elevated to supervisory positions and demonstrating expertise and leadership in the
field of treatment of chemical dependency. Not only are the appellant's achievements
and progress documented in the pre-sentence report, but reference independent
documentation in the records of the Delaware Board of Pardons, and the Court of
Common Pleas for Delaware County Pennsylvania where appellant was prosecuted for
related and the same offenses occurring during his relapse. (See argument I) these facts

36

Exhibit B

render the superior Court's reasoning that the appellant was a con-artist, and his recovery a con, absurb.[3]

The question that ought to be decided by the Supreme Court is, considering the interpreted legislative intent in the enactment of habitual offender statutes, particularly 11 Del.C., subsection 4214(a) as implicated in this case, what evidential value does appellant's positive response to treatment and progress in the community, and evidence in the record establishing that his relapse and new offenses were the result of side effects of prescribed medication, have when determining the application of the statute and resulting status in terms of fundamental fairness, when attempting to reconcile the same with such legislative intent. Appellant submits that the application of habitual offender statutes against him on the record of this case results in a contrary outcome that contravenes the legislative purpose for enactment of 11 Del.C., subsection 4214(a), and that his sentence must be vacated as a matter of fundamental fairness.

## C. DELAWARE'S HABITUAL OFFENDER STATUTE ESTABLISHES A CONCLUSIVE OR IRREBUTTABLE PRESUMPTION OF INCORRIGIBILITY.

11 Del.C., subsection 306 specifically prohibits the establishment of conclusive or Irrebuttable presumptions in the Delaware criminal code. Appellant herein argues that current practices utilized in the Superior Court, which merely require proof of the requisite number of prior convictions, particularly under the circumstances of this case, establishes an irrebuttable presumption of incorrigibility which operates as the basis for

---

[3] Further, the Pennsylvania Court of Common Pleas finding that appellant's relapse and new offenses where the result of side effects of medication amount to a judicial finding which is enforceable in Delaware Superior Court pursuant to Article IV, Section 1 of the US Constitution Full Faith and Credit Clause. See Riley v. new York Trust Co., 62 S.Ct. 608.

37

Exhibit B

the declaration of habitual offender status pursuant to 11 Del.C., subsection 4214(a), and by implication 4215.

Based on the facts and discussions presented in argument II B, 11 Del.C., subsection 4214 establishes a conclusive or irrebuttable presumption that Three prior felony convictions amount to a finding of incorrigibility that can be applied to anyone who accumulates the number of convictions, without any individualized inquiry into the particular persons other characteristics, unique circumstances or mitigating facts. Appellant advances the argument that such a presumption denies an individualized hearing to determine other relevant facts that could negate a finding of incorrigibility in spite of the presence of the prior convictions. This is particularly true when criminal history is rooted in chemical dependency or other mental health issues that require specific treatments.

A presumption is an evidentiary device that enables the trier of fact to determine the existence of a statutory element of a crime, an "ultimate" or "elemental" fact, from the existence of one or more "basic" or "evidentiary" facts already proven beyond a reasonable doubt. See County Court v. Allen, 442 US 140, 155 (1979). In Allen, the United States Supreme Court cautioned that a presumption is constitutionally invalid if it undermines the fact finders' responsibility to determine the existence of the essential elements of the inquiry. Mullaney v. Wilbur, 421 US 684, 702-03 (1975) (due process prohibits use of presumption in jury charge that relieved state of burden of persuasion on essential elements of malice); e.g. Coleman v. Butler, 816 F.2d 1046, 1048 (5th Cir. 1987) (due process prohibits use of presumption in jury charge that relieved state of burden of persuasion on essential elements of charged offenses). Also see Caldwell v. Bell, 288

38

Exhibit B

F.3d 838, 843 (6th Cir. 2002); US v. Guerra, 293 F.3d 1279, 1290 (11th Cir. 2002) and Welsh v. City of Pratt, 214 F.3d 1219, 1225 (10th Cir. 2000).

There are Two types of presumptions: (1) permissive presumptions; and (2) mandatory presumptions. It is the mandatory presumptions implicated in this inquiry, and there are Two types of mandatory presumptions: conclusive and rebuttable. It is the conclusive presumption that is implicated in the proof of previous convictions requiring a mandatory finding of incorrigibility created by 11 Del.C., subsection 4214 as has been interpreted by Delaware case law. A conclusive or irrebuttalbe presumption requires a trier of fact to infer the ultimate fact upon proof of the basic facts and thereafter removes the presumed fact from the case. Under the statutory scheme being reviewed the establishment of Three prior convictions removes the burden from the state of further proving incorrigibility, and eliminates the opportunity to present evidence which could lead to a contrary finding in violation of procedural and substantive due process of law. Unlike rebuttable presumptions, an irrebuttable presumption does not permit the trier of fact to reject the inference based on a independent evaluation of other relevant evidence in the record.

In the Federal courts, and in other context comparable to the one presented by this appeal, irrebuttable presumptions have been found to be violative of due process. See Sanstrom v. Montana, 442 US 510, 515 (1979). The United States Supreme Court held that the trial court's instruction to the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts" created an unconstitutional mandatory presumption of the element of intent. The court held that this instruction deprived the defendant of due process because it was susceptible to an interpretation that removed the

39

Exhibit B

prosecutor's burden of persuasion on the element of intent. Similar decisions that decided issues which remove the prosecutor's burden of proof where also held unconstitutional. See Yates v. Aiken, 484 US 211, 214 (1988) (instruction that malice was presumed from use of deadly weapon unconstitutionally removed state's burden of persuasion on elements of intent); Virgin Islands v. Parrilla, 7 F3d 1097 (3rd Cir. 1993) (instruction that infliction of injury is presumptive evidence of intent to commit mayhem unconstitutionally shifted burden of persuasion on element of intent). Decisions regarding the shift in burden of proof are readily identifiable across the circuits.

Similarly, the court held in Carella v. California, 491 US 263, 265-66 (1989) that a statute and jury instruction stating that theft and embezzlement of an automobile within a certain period of time unconstitutionally imposed a conclusive mandatory presumption as to the core elements of the crimes charged and foreclosed independent jury consideration of the facts.

Although the cases cited primarily focus on jury instructions that created irrebuttable presumptions, the principle remains the same which will be made much clearer as the argument progresses. The Unconstitutionality of a irrebuttable presumption created by core elements of a inquiry that forecloses independent consideration of other facts that are relevant.

In Hall v. State, Del Supr., 473 A.2d 352, 356 (1984), this court determined that the purpose of the habitual offender statute is to separate civilized society form individuals who have demonstrated their incorrigibility by repeatedly being incarcerated, released, and convicted on subsequent criminal offenses. The statute is designed as a mechanism or legislative scheme, that can result in the establishment of a status. See

Exhibit B

Gibbs v. State, Del. Supr., 208 A.2d 306, 308 (1965). The habitual offender status thereby represents a judicial finding of incorrigibility. Incorrigibility is defined as that which can not be corrected, bad beyond corrections or reform. Thus, a finding of incorrigibility is a necessary finding of fact required before habitual offender status can be declared against an individual criminal defendant.

This appeal raises the constitutional claim that 11 Del.C., subsection 4214 creates a conclusive or irrebuttable presumption of incorrigibility in proof of the existence of the requisite prior convictions. For a certainty, proof of prior convictions may establish a rebuttable presumption which would then shift the burden to the criminal defendant to establish proof sufficient enough to rebut the presumption created by prior convictions, but it is argued that establishment of a conclusive presumption which foreclosed any further inquiry into the question of incorrigibility violates both procedural and substantive due process of law. Such a presumption also violates express prohibition against conclusive presumptions in Delaware's very own criminal code. See 11 Del.C., subsection 306(a). Also see Craig v. State, Del. Supr., 457 A.2d 755 (1983).

41

Exhibit B

This is a question of first impression in our Supreme Court and raises a question
of substantive law that ought to be decided in the development of Delaware's criminal
jurisprudence, before the constitutional question is forced into the federal courts

Delaware's habitual offender statutes have been reviewed on due process
grounds, but only in the context of equal protection. See Ward v. State, Del., Supr., 414
A.2d 499 (1980). It was determined that habitual offender procedural practices did not
require a jury trial on the issue, but provided for the fundamental due process rights.[4]
Legislative intent has been reviewed and interpreted in several cases including Hall
already cited. Oney v. State, Del. Supr., 446 A.2d 389 (1982), Buckingham v. State, Del.
Supr., 482 A.2d 327 (1984); Fletcher v. State, Del. Supr., 409 A.2d 1254 (1979). The
term conviction has been interpreted as applied in subsection 4214(a) and 4214(b).
However, no previous challenge has been presented to the court on the question of
conclusive or irrebuttable presumptions, and such a challenges implications of procedural
and substantive due process ground pertaining to the adequate process due a criminal
defendant faced with the ultimate criminal penalty.

Stripped to its' essentials, 11 Del.C., subsection 4214(a) and (b) codify a statutory
scheme that establishes a status. Siple v. State, Del. Supr., 701 A.2d 79 (1997).
According to interpreted legislative intent, habitual offender statutes reach the ultimate
finding of the fact that a criminal defendant is incorrigible, which is the express purpose
of the act. See Hall v. State, Del. Supr., 473 A.2d 352, 356 (1984). Thus, the statute is

---

[4] Contrary to the ruling in Keys v. State, Del. Supr., 463 A.2d 633 (1983), that the state is constitutionally
free to adopt methods for habitual criminal proceedings within fundamental due process parameters, the US
Supreme Court in Apprendi v. New Jersey, 530 US 466, 490, 120 S.Ct. 2348, 147 L.Ed2d 435 (2000) held
that any new finding of fact that increases the penalty for a crime beyond the prescribed statutory maximum
must be submitted to a jury and proved beyond a reasonable doubt. Delaware's procedures currently
practiced under 11 Del.C., subsection 4214(a) and 4215(b) full short of due process requirements now
mandated by the US Supreme Court. This argument will be pursued in due course of this brief.

much more than a simple enhancement statute, but involves the ultimate question of whether a defendant is incorrigible. A defendant's incorrigibility is an issue of fact on which the imposition of the status of habitual offender depends. Upon a factual finding of incorrigibility the ultimate criminal penalty can be imposed under a legal status which amounts to a legal banishment from civilized society. Due process demands a full canopy of procedural rights before a penalty under such a status can be imposed as it involves substantial grievous loss. (See Keys v. State, Del. Supr., 463 A.2d 633 (1983) for the reasoning of the State Court prior to recent United Supreme Court decisions, and for the extent of rights which have been eroded by time and practice).

Appellant asserts that the statutorily created conclusive or irrebuttable presumption found in 11 Del.C., subsection 4214(a) and (b), that proof of historical fact of prior conviction alone does not reach a finding of the ultimate fact of incorrigibility, but sufficiently forecloses the inquiry into other relevant evidence which could negate a finding of incorrigibility, and shifts the burden from the state of proving said fact. In reality, current procedure operates to deny a criminal defendant the opportunity to rebut the presumption created by evidence of prior conviction. This is equally true when a plea agreement admitting previous convictions and eligibility for sentencing under the statute is at issue as in this case. The right to present mitigating evidence which could lead to a opposite finding of must be available as the process due in order that fundamental fairness is achieved.

Conclusive presumptions have been held unconstitutional when resulting in foreclosure of independent consideration by the trier of fact of other relevant facts which come to bare on the ultimate question to be decided. Once again, the record of this case

43

Exhibit B

establishes significant facts which have the potential to negate a finding of incorrigibility

in this case if the same were not foreclosed by the conclusive presumption based on

evidence of the prior convictions alone. The record of the case will demonstrate that the

trial judge signed an order of declaration of habitual offender status before all of the

evidence had been heard. Such a result offends principles of procedural and substantive

due process in that a right to a full and fair hearing on the ultimate issue of fact, which is

whether appellant is incorrigible, was foreclosed, in a manner that is both arbitrary and

unreasonable in its effects even under Keys. The issue framed in this appeal is very

similar to findings against conclusive presumptions in Skinner v. Oklahoma, 316 US 535

(1942). The United States Supreme Court in Skinner held invalid a state law providing

for the sterilization of three time felons. In his concurring opinion Chief Justice Stone

held that the procedure did not provide for a hearing on the factual issue of whether

criminal traits were in fact inheritable. Considering advances in modern medical

knowledge pertaining to organic brain disorders like chemical dependency that are at root

of most criminal behavior ultimately reviewed under the statute, the current practice is

almost as misplaced as that in Skinner.

It should also be noted that in the State of Delaware, conclusive presumptions

were abolished by statute. See 11 Del.C., subsection 306. The enactment of this statute

alone should end the inquiry under advisement on the basis of established state law that

superseded the enactment of habitual offender procedures.

It is certainly permissible under Delaware law that the required proof of prior

convictions pursuant to 11 Del.C., subsection 4214(a) and (b) to create a rebuttable

presumption of incorrigibility, shifting the burden to a criminal defendant to put forth

44

Exhibit B

proof to refute the presumption of incorrigibility established by proof of prior

convictions. See 11 Del.C., subsection 306(d). Such a construction of 11 Del.C.,

subsection 4214 would then be consistent with the criminal codes prohibition against

conclusive presumptions and conform to the requirements of due process. This

unfortunately was not the practice in this case. Such as has occurred in this case, to

foreclose a full inquiry into the factual finding of incorrigibility beyond proof of prior

convictions is violative of Delaware's own statutory prohibition against such

presumptions, and most certainly offend due process of law protected by the Federal

Constitution, and provisions of Delaware's Constitution in that substantial rights are

affected by the status of habitual offender statutes and a full hearing is mandated before

fundamental rights can be abridged. An argument regarding the extent and scope of the

hearing follows.

Finally, this court in Key v. State, Del. Supr., 463 A.2d 633 (1983) held that

"beyond reasonable notice of State's intention to seek additional punishment, right to

counsel, opportunity to be heard and be confronted with witnesses against him and right

to cross-examination and to offer evidence of his own, state is constitutionally free to

adopt such methods for habitual criminal proceedings as are most harmonious with

particular jurisdictions' allocation of responsibility between court and jury and are best

accommodated to states established procedure." Based on this ruling habitual offender

proceedings have consistently provided for less and less procedural protection, structure

and consistency, resulting in the diminishing of the procedural protection afforded a

criminal defendant facing such a process in Delaware. Including the practice of having a

criminal defendant admit eligibility for sentencing under the act in plea agreements,

Exhibit B

based on a simple acknowledgement of the fact of the requisite number of previous convictions, without properly advising procedural rights waived by such an admission.

Based on proceeding arguments it is clear that appellant presents the proposition that habitual offender proceedings are much more then a mere enhancement statute bases solely on prior convictions, but also a declaration of a status created in law predicated on the factual existence of a defendant's incorrigibility. Incorrigibility, having been defined as a condition of mind in which a criminal defendant is bad beyond correction or reform, or impervious to constraints or punishment; willful; unruly; uncontrollable, rendering such individual none amenable to any kind of treatment. Founded on previous court interpretation of the legislative intent for enacting 11 Del.C., subsection 4214, appellant has advanced an argument of unconstitutional conclusive presumption of incorrigibility in current procedure and practices in the triggering fact of previous conviction.

Appellant now presents further argument against the constitutionality of current practices held under 11 Del.C., subsection 4214(a). More specifically, appellant argues that practices under habitual criminal statutes following the rationale in Key v. State, Del. Supr., 463 A.2d 633 (1983) have effectively been overruled by the United States Supreme Court in Apprendi v. New Jersey, 530 US 466, 490, 120 S.Ct. 2348, 147 L.Ed2d 435 (2000), adopted by this court in Capano v. State, Del. Supr., 889 A.2d 968 (2006). The High court in Apprendi held that any new finding of fact, other than the fact of prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. The mandate of the court in Apprendi brings into question the constitutionality of Key, and all current procedures employed under 11 Del.C., subsection 4214, when proof of the factual

Exhibct R

issue of incorrigibility is considered in the equation. Appellant argues that current procedures under 11 Del.C., subsection 4214, and all case law following the rationale of Key, that the state is constitutionally free to adopt methods for habitual criminal proceedings as are most harmonious with particular jurisdictions' allocation of responsibility between court and jury is constitutionally infirmed because habitual offender status is predicated on whether a criminal defendant is incorrigible. Incorrigibility is a factual finding that must be separate from the triggering fact of previous convictions. However, Delaware's habitual offender procedural practices omit the requirement of a factual finding of incorrigibility which is inconsistent with the pronounced legislative intent of the procedure, creates a conclusive presumption of incorrigibility in the prior convictions, and is in conflict with the United States Supreme court mandate in Apprendi.

In Apprendi, the High Court found that "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." Incorrigibility is a fact beyond prior conviction. Particularly in situations as this one when chemical dependency has been the cause of the appellant's criminal history, including the prior convictions relied upon to support declaration of the habitual offender status, and treatment for the chemical dependency has demonstrated has demonstrated an effective outcome. A finding of incorrigibility under these circumstances must involve some consideration of the chemical dependency and treatment question before a finding that appellant is none amenable for any kind of treatment. Such a review necessarily implies a further inquiry

47



then the limited fact of history of prior conviction without examination into the treatment

issue or other reasons underlying the previous convictions. Particularly in light of

advances in modern medical knowledge of the brain disease of chemical dependency, its

relationship to crime and relapse, and the fact that the legislature intended declaration of

the statute based on the fact of incorrigibility which fact necessarily must take into

consideration underlying reasons for the criminal conduct.

Considering the interpreted legislative intent that habitual offender status be based

on a finding of incorrigibility, Hall v. State, Del. Supr., 473 A.2d 352, 356 (1984), a jury

trial on the ultimate issue of fact, with the requirement of proof of the requisite number of

prior convictions as a triggering fact, is the process due a criminal defendant faced with

such a status within the meaning of Apprendi. Thus, the Delaware habitual offender

procedure set forth at 11 Del.C., subsection 4214 and 4215 are constitutionally

inadequate under current construction. It naturally stands to reason that the application of

a statutory scheme that establishes unconstitutional conclusive presumptions, and denies

the right to trial by jury of the issue of incorrigibility, and proof beyond a reasonable

doubt on the finding of fact that increases the penalty for a crime beyond the prescribed

statutory maximum is violative of rights protected by the United States Constitution..

See Apprendi v. New Jersey, 530 US 466, 490, 120 S.Ct. 2348, 147 L.Ed2d 435 (2000).

Exhibit R

## CONCLUSION

For the aforementioned reasons set forth in appellant's arguments, his sentence is barred as a second punishment in violation of the Double Jeopardy Clause of the United States Constitution, or alternatively, requires reversal as being violative of substantive and procedural due process, and prohibition against cruel and unusual punishment.

Dated: ~~6-12-07~~
5-27-07

Salih aka Cecil Hall
SBI#104141
W-1 Bldg., Cell #G-2
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

49

Exhibit B

## IN THE SUPREME COURT OF DELAWARE

Salih Hall, )
)
    Defendant Below, )
    Appellant, )
)
Vs. )   No. 649, 2006
)
State of Delaware, )
    Plaintiff Below, )
    Appellee. )

### MOTION FOR REHEARING EN BANC

Appellant, Salih Hall, hereby moves this court pursuant to Supreme

Court Rule 4(f), for a rehearing of his appeal En Banc. Appellant will submit the

following in support of this request:

1. Appellant's appeal was decided by the court, before Justices Holland, Berger and

   Jacobs, by order, dated, October 30, 2007, denying relief and affirming conviction

   and sentence imposed in the Superior Court, New Castle County, Judge Peggy

   Ableman, on December 1, 2006.

2. Appellant moves the court for a rehearing of his appeal En Banc because the

   appeal raises a question of exceptional importance pertaining to the

   constitutionality of current practices by the state in the application of habitual

   offender statutes in Delaware, 11 Del.C., subsection 4214, which was not

   addressed by the panel in it's order opinion, dated, October 30, 2007.

   Specifically, appellant challenged current practices under habitual offender

   statutes as creating an unconstitutional conclusive presumption of incorrigibility

   on the basis of the lesser fact of prior conviction alone, removing from

   consideration the ultimate question of whether a criminal defendant is in fact

Exhibit C

incorrigible, contrary to principles of procedure and substantive due process of

law as guaranteed by the Fifth Amendment, and applicable to the states by way

the Fourteenth Amendment, of the United States Constitution, and in violation of

Delaware's own statutory prohibition against conclusive presumptions codified at

11 Del.C., subsection 306. The court completed avoided this significant

constitutional challenge to current habitual offender proceedings, allowing for

conflict to continue in the practices of the state habitual offender proceedings and

well established constitutional principles long recognized by Delaware by the

codifying of 11 Del.C., subsection 306.

3. Since appellant has raised this issue directly on appeal, this being a direct appeal,

he asserts that he is entitled to have the issue addressed, which the order, dated,

October 30, 2007, fails to as either an issue of law or fact.

4. Appellant will direct the court's attention to argument II(c), at page 37 of his

opening brief to reference the presentation of the argument mentioned above as

being properly brought before the court, and incorporate the briefing of the issue

by reference in this motion for En Banc rehearing.

5. Appellant further moves the court to consider his argument made at the end of

argument I, page 24 of his opening brief as a significant question of constitutional

law that was not addressed by the court in its' order, dated, October 30, 2007,

namely that pursuant to the Full Faith and Credit Clause of Article IV, Section 1

of the United States Constitution, that the state of Delaware is forced to recognize

the judgment of conviction of the Court of Common Pleas of Delaware County

Pennsylvania, entered December 12, 2005, which specifically found appellant's

Exhibit C

criminal conduct, including the instant offenses which form the subject of this

appeal as arising from the side effects of prescribed medication, as binding on the

state of Delaware, thereby negating a finding of incorrigibility pursuant to

habitual offender proceedings since it has already been judged that appellant's

criminal behavior was caused by chemically induced relapse arising from neuro-

psychiatric side effects of prescribed medication. It is this previous judgment that

appellant argues limits the Superior Court from a finding of incorrigibility on this

record. This court's ruling which fails to address this issue is in conflict with the

United States Supreme Court decision in Apprendi v. New Jersey, 530 US 466,

490, 120 S.Ct. 2348, 147 L.Ed. 2d 435 (2000) which held that any new finding of

fact that increases the penalty for a crime beyond the prescribed statutory

maximum must be submitted to a jury and proved beyond a reasonable doubt.

Delaware's procedures, on the legislative status of incorrigibility, under its current

practices falls short of due process requirements now required by the United

States Supreme Court, and in light of a previous finding that the acts were the

result of the side effects of medication, deny due process.

6. Appellant now argues before this court that he is entitled to have his Federal and

State Constitutional challenges to habitual offender practices in general, and

specific to this case, reviewed on direct appeal, in order to have this appeal

comport with due process of law by adequately reflecting his issues on appeal to

the highest state court in the event pursuit of Federal relief is necessary. In as

much, appellant does not waive such issues and now moves this court for a just

$Exhibit\ C$

and fair determination of the constitutional challenges presented by him on direct

appeal to this court in conformity with fundamental fairness.

**WHEREFORE**, appellant move this court for a rehearing En Banc pursuant to

Supreme Court rule 4 (f).

Dated: $11-5-07$

_____

Salih Hall
SBI# 104141
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977


## **Verification**

I, Salih Hall, hereby certify that I have applied to the Supreme Court of Delaware

for a rehearing En Banc, pursuant to Supreme Court Rule 4(f) in good faith and not

for delay, on this 5th Day of November, 2007.

_____

Salih Hall
Delaware Correctional Center
1181 Paddock Road
Smyrna, De 19977

Sworn and subscribed before me a notary public this 5th day of November, 2007.

_____

Notary Public


Exhibit C

## Certificate of Service

I, Salih Hall, hereby certify that I have serve a true and correct copy of the

attached Motion for Rehearing En Banc and Verification upon the following parties:

Lois C. Meyer
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, De 19801

By placing the same in the United States mail at the Delaware Correctional Center

on this 5TH day of November, 2007.

Salih Hall
Delaware Correctional Center
1181 Paddock Road
Smyrna, De 19977

Exhibit C

SUPREME COURT OF DELAWARE

CATHY L. HOWARD
*Clerk*

SUPREME COURT BUILDING
55 THE GREEN
DOVER DE 19901

AUDREY F. BACINO
*Assistant Clerk*
LISA A. SEMANS
*Chief Deputy Clerk*
LATOYA S. BRADY
*Senior Court Clerk*
DEBRA J. ZATLOKOVICZ
*Senior Court Clerk*

P.O. BOX 476
DOVER DE 19903

(302) 739-4155
(302) 739-4156
(302) 739-8091

November 20, 2007

Mr. Cecil L. Hall (Salih)
SBI #104141
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Re:   *Hall v. State*, No. 649, 2006

Dear Mr. Hall:

Your Amended Motion for Rehearing en Banc filed November 16, 2007, exceeds the page limit set forth in Supreme Court Rule 30(a). The Court has directed me to inform you that your amended motion is hereby **STRICKEN.**

The amended motion appears to have crossed in the mail with the Court's Order dated November 15, 2007 denying your original Motion for Rehearing en Banc that was filed November 9th. The mandate will issue and the case will be closed concurrently with this letter.

Very truly yours,

/s/ Audrey F. Bacino

cc:   Gregory E. Smith, Esquire

Exhibit S



**IN THE SUPREME COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CECIL L. HALL (SALIH) | § | No. 649, 2006 |
| | § | |
| v. | § | Superior Court |
| | § | |
| STATE OF DELAWARE | § | New Castle County |
| | § | |
| | § | Cr. ID No. 0506014139 |
| | § | |

The following docket entry has been efiled in the above cause.

November 20, 2007.        Record (conventionally returned) and
                          mandate to Clerk of Court Below. **Case
                          Closed.**

cc: The Honorable Peggy L. Ableman
    Mr. Cecil L. Hall (Salih)
    Gregory E. Smith, Esquire

                          Prothonotary
                          Received Above

                          By _____

                          Date _____

Date:  November 20, 2007

                          _____
                          /s/ Audrey F. Bacino
                          Assistant Clerk of Supreme Court

Exhibit D

# *MANDATE*

### THE SUPREME COURT OF THE STATE OF DELAWARE

TO:  Superior Court of the State of Delaware in and for New
     Castle County:

*GREETINGS:*

**WHEREAS**, in the case of:

### *State of Delaware v. Cecil L. Hall*

### Cr. ID No. 0506014139

a certain judgment or order was entered on the 1ˢᵗ day of
December 2006, to which reference is hereby made; and **WHEREAS**,
by appropriate proceedings the judgment or order was duly
appealed to this Court, and after consideration has been finally
determined, as appears from the Orders dated **October 30, 2007,**
and **November 15, 2007,** certified copies of which are attached
hereto;

**ON CONSIDERATION WHEREOF IT IS ORDERED AND ADJUDGED** that
the order or judgment be and is hereby affirmed.

/s/ Audrey F. Bacino
Assistant Clerk of the Supreme Court

Issued:  November 20, 2007

Supreme Court No. 649, 2006

Exhibit D

**STATE OF DELAWARE** }
}  ss.
**KENT COUNTY** }

I, Audrey F. Bacino, Assistant Clerk of the Supreme Court of the
State of Delaware, do hereby certify that the foregoing are true
and correct copies of the Orders dated October 30, 2007, and
November 15, 2007, in *Cecil L. Hall (Salih) v. State of
Delaware,* No. 649, 2006, as they remain on file and of record in
said Court.

### IN TESTIMONY WHEREOF,

I have hereunto set my hand and
affixed the seal of said Court at
Dover this 20th day of November A.D.
2007.

_____
/s/ Audrey F. Bacino
Assistant Clerk of Supreme Court

Exhibit D

## IN THE SUPREME COURT OF DELAWARE

Salih Hall,                                    )
     Defendant Below,                  )
     Appellant,                        )
                            )
     Vs.                               )   No. 649, 2006
                            )
State of Delaware,                             )
     Plaintiff Below,                  )
     Appellee.                         )

### AMENDED MOTION FOR REHEARING EN BANC

Appellant, Salih Hall, hereby moves this court pursuant to Supreme Court Rule 4(f) for a rehearing of his appeal En Banc. Appellant will submit the following in support of this request:

1. Appellant's appeal was decided by the court, before Justices Holland, Berger and Jacobs, by order, dated, October 30, 2007, denying relief and affirming his conviction and sentence imposed in the Superior Court, New Castle County, Judge Peggy Ableman, on December 1, 2006.

2. Appellant moves the court for a rehearing En Banc because the appeal raises a question of exceptional importance pertaining to the state of Delaware's application of habitual offender statutes, which was raised in his opening brief, but never addressed by the court in it's opinion, dated, October 30, 2007. Specifically, appellant challenges the constitutionality of current practices employed in application of 11 Del.C., subsection 4214 and 4215, as creating an unconstitutional conclusive presumption of incorrigibility, which is a legislatively established status, in addition to a simple enhancement statute. Appellant presented argument that the state habitual offender statute is a legislatively

*Exhibit E*

defined status, as well as an enhancement provision. Particularly 11 Del.C., subsection 4214(a), the statute applied in this case, that is readily distinguishable from the purely enhancement provision set forth at 11 Del.C., subsection 4214(b) which is designed to incapacity violent felons. Subsection 4214(a) provides significant discretion in imposition of sentences for any non-violent felony, and creates a range of sentencing from the probation to the statutory maximum sentence imposable for the offense, up to making the maximum a minimum mandatory, through to life in prison with the benefit of parole. According to Hall v. State, Del. Supr., 473 A.2d 352 91984) this court found that the legislature essentially provided for total incapacitation of individuals who have proven to be incorrigible through repeated criminal offenses. The argument is present in this appeal that incorrigibility is an issue of fact that is subject to mitigating evidence, such as existed in this case, namely that appellant's offenses was the result of side effects of medication. This particular issue has never been addressed by this court pertaining to habitual offender statutes, and is therefore expedient for the court to speak to it before appellant is required to proceed to the Federal Courts. Although the proof of prior conviction may trigger a finding of incorrigibility, there must be some finding independent of the prior convictions alone, or at least the opportunity for a criminal defendant to establish evidence in mitigation of a factual finding of incorrigibility in order that the procedure may comport with due process. Appellant has argued essentially that current procedure establishes a conclusive presumption of incorrigibility contrary to the United States Constitutional guarantee of substantive and procedural due process, and

Exhibit E

Delaware's own prohibition against conclusive presumptions codified at 11 Del.C., subsection 306.

3. In this case appellant not only established substantial evidence in mitigation of a finding of incorrigibility, but introduced evidence that a previous court had already entered a judgment that his criminal conduct, including the instant offenses, was the result of side effects of prescribed medication. The Justices in their October 30, 2007, order opinion failed to address appellant's argument that the State of Delaware is bound by the Pennsylvania court's finding that his criminal behavior was the result of side effects of medication through Article IV Section 1 of the Full Faith and Credit Clause of the United State Constitution. Appellant reasons that to ignore the existing judgment and to reach another opposite finding of incorrigibility necessary to declare him a habitual offender goes against principles of res judicata and collateral estoppel in addition to the Full Faith and Credit Clause.

4. Appellant moves this court to rehear his appeal En Banc in light of the order opinion, dated, October 30, 2007, does not address the constitutional questions raised in this direct appeal, as appellant's guilty plea resolves the sentencing issues, when it is abundantly clear the a guilty plea only waives pretrial errors not issues pertaining to sentencing.

5. In addition to the above matters, this appeal also raised the question of whether this court's ruling in Keys v. State, Del. Supr., 463 A.2d 633 (1983), and subsequent rulings defining the process due pursuant to habitual offender statutes, was effectively over ruled by Apprendi v. New Jersey, 530 US 466, 490, 120

Exhibit E

S.Ct. 2348, 147 L.Ed.2d 435 (2000), as the state legislature enacted the act to be based on incorrigibility, a finding of which is triggered by a motion setting froth the requisite number of previous convictions. In Apprendi the US Supreme Court ruled that any new finding of fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Since this is new law, any plea bargain would be required to acknowledge this right for a valid waiver could be had. Appellant argues that proof of incorrigibility as a matter of fact is required by due process to be consistent with the legislative mandate enacting the habitual offender act. Without such proof of the legislative based status is unconstitutionally presumed on the basis of the lesser triggering fact of prior conviction alone. Appellant reiterates that habitual offender statutes in Delaware provide for both a legislatively created enhancement of sentence and status.

6. Appellant will direct the court's attention to argument II (c), at page 37 of his opening brief to reference the presentation of the argument mentioned above as being properly brought before the court, and incorporates the briefing of the issue by reference in this motion for En Banc rehearing.

7. Appellant further moves the court to consider his argument made at the end of argument I, page 24 of the opening brief, as setting forth his Full Faith and Credit argument that Delaware is bound by the Pennsylvania court's finding that his offenses were the result of side effects of medication thereby negating a contrary finding of incorrigibility.

Exhibit E

8. Appellant submits that these two (2) constitutional challenge to his being declared a habitual offender form the basis of his direct appeal and the court's failure to address these issues are tantamount to denial of the right to appeal as is established by Delaware law.

**WHEREFORE**, Appellant moves this court to rehear his appeal En Banc, address the constitutional challenges made, and establish an appropriate record of the legal reasoning of the court in the event Federal review is required.

**Dated:** /\$-7-07

Salih Hall
Delaware Correctional Center
1181 Paddock Road
Smyrna, De 19977

### Verification

I, Salih Hall, hereby verify that the herein motion for rehearing En Banc is made in good faith and not for the purpose of delay this 7th day of November, 2007.

Salih Hall
Delaware Correctional Center
1181 Paddock Road
Smyrna, De 19977

Exhibit E

## Certificate of Services

I Salih Hall, hereby certify that I have served a true and correct copy of the

attached Motion for rehearing En Banc and Verification, upon the following parties:

> Deputy Attorney General
> Department of Justice
> 820 N. French Street
> Wilmington, De 19801

By placing the same in the United States Mail at the Delaware Correctional

Center this 7th day of November, 2007.

Salih Hall
Delaware Correctional Center
1181 Paddock Road
Smyrna, De 19977

Exhibit E

## IN THE SUPREME COURT OF DELAWARE

Salih Hall,                              )
     Defendant Below,                )
     Appellant,                       )
                      )
     Vs.                              )    No. 649, 2006
                      )
State of Delaware,                       )
     Plaintiff Below,                 )
     Appellee.                        )

### MEMORANDUM OF LAW IN SUPPORT OF AMENDED
### MOTION FOR REHEARING EN BANC\
TO:  CHIEF JUSTICE MYRON T. STEELE

### I.      Introduction

Appellant has filed a motion in this court for a rehearing En Banc, primarily based on

the failure of the Three (3) Member Panel hearing this appeal to acknowledge and

decided on the merits Two (2) significant questions of constitutional law as it applies to

the record of this case, and the habitual offender statutes in Delaware, 11 Del. C.,

subsection 4214 and 4215.

Appellant is pressed to express to the court his concern about what appears to be an

evolved history and pattern of hostility toward pro se appeals in this court, and a

tendency to construe all arguments made in the most restrictive and narrow manner

possible, with a view to avoid issues, bar claims and deny consideration for technical

reasons.

The United Supreme Court in Erickson v. Pardus, 127 S.Ct 2197 (2007) has held

that pro se pleadings must be liberally construed "however inartfully pleaded," and must

be held to less stringent standards than formal pleadings drafted by lawyers.

Exhibit F

Not a generation ago court's sought to establish justice, and sought to balance the rights of indigent defendants with the awesome power of the state and their unlimited resources. From the prospective of the pro se litigant the courts and the prosecution are now functioning to suppress prisoners and limit their access to the courts. Delaware is highly recognized for its judiciary because of the quality of corporate, banking and international law decided in its' courts, but is clearly one of the most repressive criminal justice systems in the nation. From this a perception is generated that it does not matter whether an indigent criminal defendant has a valid claim, it will not be acknowledged by the court, and instead, a means to deny the claim will be utilized in spite of its merits.

Appellant moves this court to observe the Erickson v. Pardus rule inconsideration of this application. A legitimate claim of injustice is presented in this appeal that should be remedied by this court. As appellant has a history of chemical dependency and is now a victim of neuro-psychiatric side effects of medication.

## II.    Nature and Stage of Proceedings

Appellant has filed a direct appeal to this court form the conviction and sentence of the Superior Court of New Castle County, dated, December 1, 2006, as the consequences of a guilty plea in which appellant acknowledge that he had the requisite number of prior convictions to be eligible as a habitual offender pursuant to 11 Del. C., subsection 4214(a).

Appellant raised on direct appeal in his opening brief, Two (2) broad issues, each divided in subparts. Argument I essentially raised a question of whether a restitution judgment entered in the State of Pennsylvania for the same offenses constituted multiple punishment when Delaware sentenced appellant for the same offenses. This court found

Exhibit F

that restitution is remedial and not punishment, and therefore decided this aspect of the claim on its' merits. However, the panel did not address the second elements of this constitutional challenge to the sentencing. When the Pennsylvania court entered judgment it found that appellant's criminal behavior, a rash of burglaries involving Joseph A. Banks Clothier, a Pennsylvania corporation, which included burglaries to the victims Delaware store as charged in this instant case, that appellant's conduct was the direct result of side effects of prescribed medication. The transcript of the Pennsylvania court proceeding was included in the appendix of appellant's opening brief producing a record of that court's findings of facts, verdict and the judgment of the court setting forth the court's reasoning. *See transcript of plea and sentencing Court of Common Pleas Delaware County Pennsylvania, December 12, 2005, pages 16 and 17.* Appellant argued in his opening brief that the Pennsylvania court's judgment is binding on the state of Delaware pursuant to the Full Faith and Credit Clause, Article IV, Section 1 of the United States Constitution, in that a judicial ruling had already been rendered finding that appellant's crimes were the result of neuro-psychiatric side effects of medication. This aspect of the claim that the Full Faith and Credit Clause binds the state of Delaware in as far as its declaration of habitual offender incorrigibility was not reviewed by the panel and not decided on the merits. This appellant has move this court for a rehearing En Banc to review the order of the panel, dated, October 30, 2007, and to address the constitutional claim that the court failed to address which challenges the legality of imposing a sentence under habitual offender statues on the record of this appeal.

The second argument presented by appellant in his opening brief is a continuation of his Full Faith and Credit Clause claim of unconstitutionality, challenging the

Exhibit F

constitutionality of Delaware's habitual offender statute 11 Del. C., subsection 4214(a)
and 4215(b) as creating an unconstitutional conclusive or irrebuttable presumption of
incorrigibility in violation of procedure and substantive due process as guaranteed by the
Fifth Amendment of the United States Constitution, applicable to state through the
Fourteenth Amendment of the United States Constitution, including Delaware's own
statute 11 Del. C., subsection 306 which prohibits conclusive presumptions. This
constitutional challenge was also avoided or neglected by the court's ruling, dated,
October 30, 2007.

Appellant has moved this court for a rehearing En Banc seeking the court's
review and disposition of these Two (2) constitutional challenges to his sentencing as a
habitual offender.

### III. Clarification of Constitutional Challenges to Declaration of Habitual

#### Declaration

Appellant presents a claim that the judgment and sentence of the State of
Pennsylvania Court of Common Pleas for Delaware County, specifically that his
burglaries of Joseph A. Banks Clothier retail stores in Delaware and Pennsylvania were
the result of neuro-psychiatric side effects of medication, have a res judicata effect on this
the proceedings in the Delaware Superior Court of New Castle County when it imposed
sentence on December 1, 2006, pursuant to Article IV, Section 1 of the United States
Constitution, the Full Faith and Credit Clause. That the Pennsylvania court's findings
and adjudication is a judgment within the meaning of the Full Faith and Credit Clauses
protection, and within the meaning of Superior Court Criminal Rule 32 (b), and is
binding upon the New Castle County Court in that appellant's criminal conduct can not

Exhibit E

now be interpreted as incorrigibility, the wrong or social harm to be punished by the declaration of habitual criminal status and application of habitual statutes in accordance with the express legislative intent for enacting habitual statutes in Delaware. This appeal raises the issue of whether a finding of incorrigibility, which is the legislative social wrong intended to be punished through habitual offender proceedings, can be had when such is contrary to the binding or res judicata effect of the Pennsylvania judgment.

This is a significant constitutional challenge to the application of habitual offender sanction imposed against appellant, and is evidence in support of appellant's second claim that habitual offender proceedings in Delaware are now creating a unconstitutional conclusive presumption of incorrigibility, as the question relates to whether substantive and procedural due process is offended by current proceedings and practices pursuant to 11 <u>Del. C.</u>, subsection 4215(b) that after a full hearing, "if it shall appear to the satisfaction of the court at a hearing on the motion that the defendant falls within subsection 4214 of this Title, the court shall enter an order declaring the defendant an habitual criminal and shall impose sentence accordingly."

According to <u>Key v. State</u>, Del. Supr., 463 A.2d 633 (1983), provides a criminal defendant the right "to be present with counsel, have an opportunity to be heard, be confronted with witnesses against person, have the right to cross examine, and offer evidence of person's own."

These provision clearly imply that the inquiry is designed to exceed the narrow inquiry of the existence of the requisite prior convictions, and providing for the introduction of mitigating evidence. However, over time habitual offender practices and proceedings have fell drastically from this original mark to limit the inquiry to whether

Exhibit F

the prior convictions can be proven to the exclusion of any other evidence. What was originally a rebuttable presumption of incorrigibility has now degenerated to become an irrebuttable or conclusive presumption of incorrigibility. It is this current degenerated practice that is what was applied against appellant, and what is challenged in this direct appeal.

## IV.    Legal Argument

The habitual offender statute in Delaware has been determined to be a legislative scheme that can result in the establishment of a status. Gibbs v. State, Del. Supr., 208 A.2d 306, 308 (1965). On this basis it is argued that the habitual statute is much more that a mere enhancement statute which simply increases the maximum penalty of the triggering offense by some incremental increased penalty because of the prior conviction like in many other states. In Delaware habitual offender status can result in a form of legal banishment from civilized society for life under a legislatively created status. Status in this context means the legal position of an individual or group as it relates to rights and implies capacity for the enjoyment of legal rights. See James Hadley, Introduction to Roman Law 106 (1881). According to this court's ruling in Hall v. State, Del. Supr., 473 A.2d 352, 356 (1984), habitual offender status is designed "*to separate civilized society from individuals who have demonstrated their incorrigibility by repeatedly being incarcerated, released, and convicted of subsequent criminal offenses.*" Thus, habitual offender declaration in Delaware is tantamount to a finding of incorrigibility of a person as a matter of fact, and as a legislatively created status which essentially declares that an individual is unfit to live in civilized society giving the courts authority to banish such a person from society for life.

Exhibit F

In this case, appellant has presented evidence, including the finding of a
Pennsylvania Court that his charged conduct was induced by the side effects of a
prescribed medication. These facts which where not countered or negated in the record
of this case, do not support a factual finding of incorrigibility, which is completely
contrary to the previous judgment, and therefore, logically such a declaration is also not
justified in spite of the prior felony convictions because of the circumstances of the
triggering offenses. In fact, the record of this case, particularly the pre-sentence report,
establishes that appellant show major progress and rehabilitation after obtaining treatment
during a previous incarceration, and had it not been for the neuro-psychiatric side effects
of a prescribed medication, appellant was not likely to have committed the new offenses.
Weighing appellant's treatment and progress in the community against the nature and
circumstances surrounding his criminal behavior, a finding of incorrigibility can not be
supported. To rule other wise is clearly to find that prior conviction is conclusive o  $\overset{\frown}{\cdot}$
incorrigibility regardless of the factual record.

It is here that appellant relies upon the Full Faith and Credit Clause of Article IV,
Section 1 of the United States Constitution, that the factual finding made by the
Pennsylvania court must at least be given a res judicata effect in Delaware prohibiting an
adverse factual finding of incorrigibility. See 28 USCA, Section 1738, and Davis v. US
Steel Supply, Division of US Steel; Corp., C.A. 3 (Pa) (1982), 688 F. 3d 166; also Durfee
v. Duke, 84 S.Ct. 242, Herrera-Inirio v. INS., 208 F.3d 299, and Cooley v. Weinberger,
398 F. Supp. 479.

On this record, appellant argues that Delaware's habitual offender statutes is
constitutionally flawed because it creates a unconstitutional conclusive presumption of

$Exhibit \ F$

incorrigibility on prior conviction alone contrary to Delaware's own statute 11 Del. C., subsection 306 and principles of procedural and substantive due process protected by the Federal Constitution. See Appellant's opening brief.

The line of decisions of this court have never called upon this court to review 11 Del. C., subsection 4214 and 4215(b) on the question of whether the statute creates an unconstitutional conclusive presumption, or to distinguish the enhancement aspect of the provision as it relates to procedural protection required by due process for the status. Therefore, this appeal raises a question of first impression that should be liberally construed because of appellant's pro se status. See Erickson v. Pardus, 127 S.Ct. 2197 (2007).

. It is here argued that prior conviction may trigger habitual offender proceedings, that the prior convictions alone cannot be the end all factual basis of such a declaration of status, particularly when substantial evidence has been introduced leading to a different conclusion, and that evidence being a judicial finding of fact based on court appointed psychiatric findings. Otherwise, the constitutional right to present mitigating evidence against a factual finding of incorrigibility is denied by the practice contrary to principles of fundamental due process or fairness, even more so when it has already been well established that incorrigibility was what the legislature intended to protect society against when enacting the statutes. Otherwise, the long standing rule that sentencing court must be open minded is negated contrary to well established principles of due process. See Superior Court Criminal rule 32(a), and State v. Moore, 108 A.2d 675 (1954). Habitual offender proceedings are not like mandatory sentencing that removes judicial discretion altogether. The opposite is actual true in that courts are required to make sure that the

Exhibit F

record is free from legal error and abuse of discretion. See <u>Morales v. State</u>, Del. Supr.,
696 A.2d 390 (1997).

Appellant asserts that he was entitled to the res judicata effect of the Pennsylvania
court's finding that his criminal behavior was the result of the neuro-psychiatric side
effects of prescribed medication. The psychiatric report included in the pre-sentence
report of this case, which was the basis of the Pennsylvania court's factual finding clearly
indicated that had it not been for these side effects of medication that appellant would not
have relapsed or committed the offenses. In fact, the psychiatric conclusion of the report
was that appellant was guilty, but mentally ill at the time of the offenses due to the side
effects of the medication. When the court found that appellant's conduct was likely the
result of the side effects of the medication the report and this finding became part of the
findings of fact and judgment of the court involving the identical facts in this instant case,
implicating <u>Article IV, Section 1 of the United States Constitution</u> in terms of the binding
effect of that judgment; particularly in light of the fact that this court recognized that
restitution of the Pennsylvania court in it order/opinion.

On this record, there is not evidence to support a finding of incorrigibility. In
fact, the opposite is apparent, that appellant's behavior was induced by the medication.
This is where the current practice creates an unconstitutional conclusive presumption
because current practices appear to demand that the declaration be upheld in spite of the
record of res judicata effect of a prior judgment.

A presumption is an evidentiary device that enables the trier of fact to determine
the existence of a statutory element of a crime, an "ultimate" or "elemental" fact, from
the existence of one or more "basic" or "evidentiary" facts already proven. See <u>County</u>

Exhibit E

Court v. Allen, 442 US 140, 155 (1979). In Allen, the United States Supreme Court
cautioned that a presumption is constitutionally invalid if it undermines the fact finder's
responsibility to determine the existence of the essential elements of the inquiry.
Mullaney v. Wilbur, 421 US 684, 702-03 (1975). The record in this case does not
support a finding that the Superior Court simply did not believe mitigating evidence,
instead demonstrates that the court did not consider it relevant, operating off the premise
that appellant's admission of the prior convictions ended the matter. The evidence of this
fact is the court failure to even| review an article from a medical journal presented by the
appellant when the court admitted having never heard of the side effects of the
medication in questions.

There are Two (2) types of presumptions: (1) permissive presumptions; and (2)
mandatory presumptions. It is the mandatory presumption implicated in this inquiry, and
there are Two (2) types of mandatory presumptions: Conclusive and rebuttable.

It is evident that a conclusive presumption is implicated in Delaware's practices in
habitual offender proceedings in the proof of previous convictions requiring a mandatory
finding of incorrigibility created by 11 Del. C., subsection 4214 and 4215 as has been
interpreted by Delaware case decisions. See Saunders v. State, Del. Supr., 401 A.2d 629
(1979), cert. denied, 449 US 845, 101 S.Ct. 128, 66 L.Ed 2d 54 (1980); and State v.
Cobb, Del. Super. Ct., 592 A.2d 983 (1990).

Under the statutory scheme being reviewed, the establishment of three (3) prior
felony convictions of any grade, upon a fourth conviction, remove the burden from the
state of further proving incorrigibility, and eliminates the opportunity to present evidence
which could lead to a contrary finding. This clearly is violative of procedural and

Exhibit F

substantive due process of law. Unlike rebuttable presumptions, an irrebuttable or conclusive presumption does not permit the tier of fact to reject the inference based on a independent evaluation of other relevant evidence in the record. This is of particular significance in this case in determining whether a conclusive presumption has been created in light of the opposite Pennsylvania judgment that appellant's conduct was the result of medication side effects. With the Hodge poge of amendments to the statute over the years, and the case law interpreted it in an attempt to assure that the statute is not found to be unconstitutionally vague, an atmosphere is created that clouds the rights of offenders subject to this provision of the law, which has gone progressive against constitutional safeguards.

The line of case decisions in this state interpreting the habitual offender statues clearly hold that practices considered proof of prior conviction conclusive proof of incorrigibility even though mitigating facts could exist as are present in this case. The distinction between a declaration of status of this degree must be distinguished from a mere enhancement of sentence. Thus, there are circumstances which due process would require be considered. Particularly as in this case a ruling having been made in prior proceedings that the criminal conduct was the result of side effects of very dangerous medication which would render a declaration of incorrigibility inopposite to the well established legislative intent for enacting habitual offender statutes.

Appellant, here, and throughout this direct appeal raises a constitutional challenge to Delaware's current practices and procedure under the habitual offender statutes on the basis of it being a legislatively created status, and argues that since the legislature has been found to have intended that habitual offender declaration and status is tantamount to

Exhibit F

a safeguard of society from the incorrigibility of predators, incorrigibility then is a necessary fact that must be established which is presently disregarded and presumed on the basis of the previous conviction alone. See Hall v. State, Del. Supr., 473 A.2d 352, 356 (1984). It would appear that a rebuttable presumption would be constitutional as where proof of the prior conviction acted to merely trigger the proceedings, but to end the inquiry on the basis of the prior conviction alone creates a constitutionally deficient procedure, as more is involved then a simple enhanced sentence, but a status which impacts substantial rights. Particularly in a case like this when considering the res judicata effect of the Pennsylvania court's judgment that appellant only committed the criminal conduct as a result of the side effects of medication.

For these reasons appellant moves the court to review the constitutionality of the habitual offender statute, and his sentencing under the status under on this record.

Appellant finally moves the court to review the statute on one last due process ground. Appellant argues on this appeal that the line of this court's decisions following Key v. State, Del. Supr., 463 A.2d 633 (1983) is expressly overruled by the United States Supreme Court decision in Apprendi v. New Jersey, 120 S.Ct. 2348 (2000). Specifically, appellant argues that the legislatively created habitual criminal status is based on the factual question of whether a defendant is incorrigible, previous conviction triggering the inquiry, which is a new finding of fact beyond the history of prior conviction, requiring that such an issue be submitted to a jury and proven beyond a reasonable doubt. This is significant since the legislature sought to punish incorrigibility which is not necessary proven by prior conviction alone which is the principle that it is believed that the facts of this case emphasizes. The rationale of Keys that the state is free to establish any

Exhibit F

procedure it sees fit within certain guidelines does not take into consideration the distinction between habitual offender status, and a conventional enhancement of sentence, and subsequently fails to conform with the standard laid down in Apprendi. Any other conclusion would ignore the well established interpretation of the legislative intent in it's enactment of habitual offender statutes when the status carries the extreme punishment of legal banishment from civilized society for life for being convicted of any grade or degree of felony.

It is for the above reason that appellant submits prayer that this court will determine his constitutional challenges to his sentence as a habitual criminal, and to the procedure as a whole so that the matter can be ripe for Federal review of this important distinction, first giving the state the opportunity to address the claim

### Conclusion

WHEREFORE, appellant moves this court for rehearing En Banc to consider the res judicata effect of the Pennsylvania court's judgment in this case pursuant to Article IV, Section 1 of the United States Constitution, review the constitutional question of whether current habitual proceedings have created an unconstitutional conclusive presumption of incorrigibility, and to review the applicability of Apprendi v. New Jersey, 120 S.Ct. 2348 (2000) as it relates to Delaware's habitual offender proceedings.

Dated: / /- 2 7 -c 7

Salih Hall
SBI# 104141
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Exhibit K

## **Certificate of Service**

I, Salih Hall, hereby certify that I have served a true and correct copy of the

attached Memorandum of Law in Support of Amended Motion for Rehearing En Banc,

upon the following party:

> Loren C. Meyer, Esquire
> Deputy Attorney General
> Department of Justice
> 820 N. French Street
> Wilmington, De 19801

By placing the same in the mail at the Delaware Correctional Center on this 27th

day of November, 2007.

Salih Hall
Delaware Correctional Center
1181 Paddock Road
Smyrna, De 19977

Exhibit F