Salih (Cecil Hall/ Salih Hall)
SBI # 104141
Delaware Correctional Center
1181 Paddock Road
Smyrna, De 19977

February 8, 2008

Honorable Sue L. Robinson
United States District Court
Federal Building
844 King Street
Wilmington, De 19801



RE: <u>Hall v. Phelps, et. Al., Case No. 1:08-cv-27SLR</u>

Honorable Judge Robinson:

 This comes as the petitioner's letter/ memorandum in support of his request for relief in the instant habeas corpus proceeding. It is presented in this manner following reading a news journal article where Chief Judge Gregory M. Sleet suggested that this format be used because of a vacant judge. Therefore, pleas consider this format in lieu of an official memorandum.

 The herein is presented to clarify petitioner's arguments in these proceedings, and to enclose a psychiatric report for your consideration. This document is central to an under standing of my claims before the court, and to the personal dilemma that this situation represents.

## I. Background Information

 The petitioner is a recovering person who has suffered a problem with chemical dependency since the age of 13 when he first became addicted to the intravenous use of heroin. Consequently, the petitioner's problems reflected in his criminal record which goes back to his adolescents, from which time petitioner has been convicted primarily of non-violent property crimes as a part of his chemical dependency, in that his criminal behavior is a feature and part of his addiction pattern. (*There is a wealth of scientific literature on the correlation ship between addiction and particular patterns of criminal behavior. During petitioner's last criminal episode he was able to establish through expert testimony that he is a high intensity addict, and that burglary was a part of his*

1

*addiction pattern. On this basis petitioner was able to obtain an order from Judge Barron for his first treatment opportunity. The background for this finding is in the Superior Court record).*

Attached hereto, and incorporated herein be reference, please find the psychiatric report of Dr. Stephen Mechanick which establishes that petitioner's relapse and subsequent new offenses were the direct result of neuro-psychiatric side effects of prescribed medication. This medication is called Interferon. It is the evidence of the chemically induced relapse and neuro-psychiatric side effects of medication that are at the core of these proceedings. In addition to a claim of double jeopardy on the basis of multiple punishment, the question arises whether the un-contradicted evidence of the neuro-psychiatric side effects of prescribed medication being the cause of crimes charged negates a finding of habitual offender status, which according to judicial interpretation of the legislative intent in enacting 11 Del. C., subsection 4214, is to punish incorrigibility. Particularly in light of the previously entered Pennsylvania judgment, the question of res judicata effect of the Pennsylvania judgment under the Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution is presented by petitioner in these proceedings. Petitioner also challenges 11 Del. C., subsection 4214 and 4215 as establishing an unconstitutional conclusive presumption of incorrigibility, particularly in view of the record in this case of undisputed evidence that offenses where the result of chemically induced neuro-psychiatric side effects of prescribed medication. Petitioner also challenges the unconstitutionally vagueness of these statutes, and the violative effect of the procedure in Delaware under these provisions of the 5th, 6th, 8th and 14th Amendments of the United States Constitution under Apprendi v. New Jersey, 120 S.Ct. 2348 (2000).

Before proceeding to argument, the petitioner would request the court to review the psychiatric report attached hereto with care because it demonstrates how well petitioner was doing before being overtaken by illness and the side effects of the medication prescribed to treat his chronic Hepatitis C. Virus, and a back injury at the same time. The interaction of the medication is a factor. In addition, petitioner would request the court to subpoena the pre-sentence report of the Superior Court in this case so that the record before the court at sentencing can be a part of the record in these

2

proceedings, and so that letters of job/ career standing and quality can provide the court with a true profile of petitioner's recovery in the community, and the devastating effects of the medications prescribed. Petitioner came from a GED to participating in a Doctorial program during his recovery.

## II. State Statutory Scheme Under Challenge

The habitual offender statutes in Delaware, 11 Del. C., subsection 4214, have been scrutinized by the Supreme Court of Delaware for various reasons. In Hall v. State, Del. Supr., 473 A.2d 352, 356 (1984), the purpose of the habitual offender statutes was interpreted as to "separate civilized society from individuals who have demonstrated their 'incorrigibility' by repeatedly being incarcerated, released, and convicted of subsequent criminal offenses." Therefore, the legislative intent behind the enactment of habitual offender statutes in Delaware has been found to be to protect against individuals found to be incorrigible. Although this is a legitimate function of the legislature's police power, a constitutional problem is created by the use of presumptions which will be discussed further along in our argument.

In Gibbs v. State, Del. Supr., 208 A.2d 306, 308 (1965), the court found that the habitual offender statute is a legislative scheme that can result in the establishment of a status. Status in this context means the legal position of an individual or group as it relates to rights and implies capacity for the enjoyment of legal rights. See James Hadley, Introduction to Roman Law 106 (1881). Therefore, habitual statutes in Delaware involve banishment from civilized society as an unfit person who are proven incorrigible. It is argued here, that although prior convictions may trigger the inquiry into whether an individual is incorrigible, the existence of such prior conviction is not conclusive proof of incorrigibility. It is also interesting to note that over 85% of those declared habitual offenders in Delaware are persons who suffer untreated chemical dependency.

According to Morales v. State, Del. Supr., 696 A.2d 390, 394 (1997) the courts set forth the premise that an affirmative determination that an individual has qualified for habitual criminal status permits the imposition of an enhance punishment, which may exceed the statutory range of sentences for the predicate or triggering conviction. This enhancement of sentence beyond statutory maximum term is the focal point of our challenge here.

3

In Buckingham v. State, Del. Supr., 482 A.2d 327 (1984), reiterating Hall v. State, 473 A.2d 352 (1984) the court found that the legislature intended to reserved the habitual offender penalty for those individuals who where not rehabilitated after the specified number of separate encounters with the criminal justice system and a corresponding number of chances to reform. Thus, in Buckingham, it was determined that under 11 Del. C., subsection 4214(a), Three separate convictions are required, each successive to the other, with some chance for rehabilitation after each sentencing, before the declaration of habitual status is appropriate. *(Here the constitutional question of a chance for rehabilitation is raised. Considering advances in medical knowledge concerning chemical dependency, now under standing that it is a disease of the brain, with out professional treatment, can prison be considered a change for rehabilitation when mountains of statistical and scientific data conform that it is not)*

Petitioner here argues that the habitual offender status in Delaware is tantamount to a factual finding of incorrigibility. The legislative purpose of the status has been found to create a means to separate from civilized society those individuals who have demonstrated incorrigibility. Petitioner submits that this intent is controlling when evaluating the statute.

However, petitioner argues that incorrigibility is a factual finding beyond prior convictions, and that due process requires that this essential fact be proven. Proof of prior conviction is enough to trigger the inquiry concerning a particular defendant's factual incorrigibility, and it such evidence could even constitute a rebut table presumption of incorrigibility, but does not on its own prove incorrigibility. This is where petitioner argues that Delaware's habitual offender statute is unconstitutionally vague, and where the provision, and Delaware's practices in particularly, contravene the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution. Particularly regarding a chance for reform as found in Buckingham v. State, Del. Supr., 482 A.2d 327 (1984), under the constitutional doctrine of evolving standards of decency when a defendant, as this petitioner, is proven to suffer from chemical dependency as the basis for criminal conduct, and chemical dependency is now classified as a brain disease.

It is here that it should be noted that, although the Delaware Legislature has enacted the Delaware Department of Corrections with an established mandate for

4

rehabilitation as an objective, substance abuse treatment was never provided petitioner until 1997, after several previous incarcerations. After treatment, petitioner demonstrated substantial recovery as evidence of the effectiveness of treatment in providing him as an addict with a chance for reform. The record will reflect that petitioner was a success story until suffering from the side effects of prescribed medication.

11 Del. C., subsection 6502 which defines the purpose and construction, custody of inmates, provides that the Department establish treatment, rehabilitation and restoration of offenders as useful, law abiding citizens within the community. To accomplish these goals the Department is to establish Diagnostic services pursuant to 11 Del. C., subsection 6523, and treatment and rehabilitation programs pursuant to 11 Del. C., subsection 6531. However, in spite of petitioners history of chemical dependency, well documented in the records of Delaware's Superior Court, he was never provided treatment during previous incarcerations. In fact, it was not until petitioner initiate litigation in 1995 that Judge Barron order petitioner into treatment on the basis of testimony in the record from an expert that petitioner was a high intensity addict.

It is for these reasons that petitioner argues that the state of Delaware has breached a fiduciary duty to provide drug treatment as chemical dependency was his presented problem for criminal conduct upon admission into the prison system. Seeing that chemical dependency is now a recognized brain disease and neuro-chemical disorder, failure of the state to provide reasonable accommodation for his treatment implicates the 8th amendment prohibition against deliberate indifference to serious medical/ mental health needs, and raises a constitutional question about the chance for reform provided him following each conviction.

Based on all of the above, petitioner argues that the Delaware habitual offender statute has created an unconstitutional conclusive presumption of incorrigibility on the proof of prior conviction alone, when each of his incarcerations did not provide a realistic chance for reform considering his disease.

First, petitioner argues that conclusive presumptions were abolished in the 1970's when the state legislature enacted 11 Del. C., subsection 306. As a matter of State law the enactment of 11 Del. C., subsection 306 in the 1970's must be construed to impact habitual offender statutes which were enacted in 1953.

5

Second, conclusive presumptions have long been found to violate Federal principles of procedural and substantive due process of law through the Fifth and Fourteenth Amendments of the United State Constitution. See County Court v. Allen, 442 US 140, 155 (1979); and Mullaney v. Wilbur, 421 US 684, 702-03 (1975).

These principles are far more important in this inquiry when view in conjunction with the constitutional doctrine of evolving standards of decency of the Eighth Amendment of the United States Constitution. For example, in Buckingham v. State, Del. Supr., 482 A.2d 327 (1984), Delaware courts found that in order to qualify as a habitual offender Three separate convictions are required, each successive to the other, with some chance for rehabilitation after each sentencing. However, the state courts reason that this requirement is merely a mathematical issue in calculating the number of prior conviction. The suggestion is that incarceration alone is a chance for reform. This rationale fails in the face of modern science concerning chemical dependency as a disease, and is erroneously premised on the Department of Corrections fulfilling its mandate of rehabilitation. A conclusive presumption that prior convictions alone are incorrigibility must fall in the light of these two flaws in logical and fact.

Petitioner argues that state law and practice is constitutionally problematic in cases like this one because of the Eighth Amendments constitutional doctrine of "evolving standards of decency." A review of Delaware sentencing statistics will demonstrate that more then half of those convicted and sentenced in Delaware under habitual offender statutes are persons who suffer from the untreated disease of chemical dependency. It is now know by the national scientific community that chemical dependency is a brain disease and neuro-chemical disorder that incarceration aloe does not provide an adequate chance for rehabilitation. In fact, all studies show that without substantial treatment it is predictable that a person suffering from the disease will progress further and further toward criminal, and other self destructive self defeating behavior. This is the progressive nature of the disease. Thus, the question before this court under the doctrine of evolving standard of decency, is can criminal conduct resulting from untreated chemical dependency amount to factual incorrigibility, and as in this case can chemically induced relapsed, following substantial evidence of reform, be

6

considered incorrigibility, particularly on the record of this case, and conform to constitutional standards.

It is this premise that petitioner argues renders Delaware's habitual offender statute an unconstitutional conclusive presumption of incorrigibility on the proof of prior conviction alone. In light of 11 Del. C., subsection 306, and Federal principles of procedural and substantive due process of law, petitioner argues that proof of prior conviction should only be permitted as a rebut table presumption of incorrigibility that can be over come by proof of mitigating facts, untreated addiction being a major one to consider. However, Delaware habitual offender statutes have not been properly interpreted based on prior conviction being rebut table presumption of incorrigibility, and therefore, almost all sentences of habitual offenders status in Delaware are constitutionally infirmed by being based on unconstitutional conclusive presumption of incorrigibility on the basis of prior conviction alone, including the petitioner's in this instant case. Under evolving standards of decency following modern medical knowledge of addiction, incarceration without treatment can not be said to provide a chance for rehabilitation, and such a chance for rehabilitation is required as a matter of due process before an enhanced penalty based on incorrigibility can be imposed as a matter of constitutional principle.

Finally, petitioner argues that proof of incorrigibility as a factual finding should be governed by the United States Supreme Court standard set in Apprendi v. New Jersey, 120 S.Ct. 2348 (2000). Incorrigibility should be subjected to the reasonable doubt standard of proof before a jury. For these reasons the declaration of habitual offender in this case should be vacated as unconstitutional even though it was based on a plea because the waiver of such rights where not intelligently made.

### III. Res Judicata Effect of Pennsylvania Judgment

The petitioner was sentenced on December 12, 2005, as a result of a negotiated plea agreement which included restitution for both the Pennsylvania offenses, and those charged in Delaware. The plea was entered in the Court of Common Pleas, Delaware County, Pennsylvania, Commonwealth v. Hall, No. 4150, 2005, for the burglaries of Joseph A. Banks Clothiers retail stores. The burglary of Joseph Banks' stores in both states where initially the subject of a multi-jurisdictional investigation, between Delaware

and Pennsylvania State Police agencies. This is a fact that should be taken into account when reviewing this case, and the impact of multi-jurisdictional character of the initial investigation on the plea agreement and judgment entered.

As a significant aspect of the Pennsylvania court's judgment, it was found that the defendant committed all offenses against the victim, and Pennsylvanian corporation, as the direct result of neuro-psychiatric side effects of prescribed medication. This finding of fact was also adopted by the Delaware pre-sentence investigation report constituting the record in this case in the state court, and was un-contradicted by the State Department of Justice at sentencing.

Petitioner submits that he is entitled to the res judicata effect of the Pennsylvania court judgment pursuant to Article IV, Section 1 of the United States Constitution, which is a bar to a finding of incorrigibility which is the legislative objective of punishment of habitual statutes in Delaware. Petitioner submits that a find that his criminal conduct was the result of chemically induced neuro-psychiatric side effects of prescribed medication negates the possibility of a finding that he is incorrigible, particularly after review of evidence in the record of petitioner's recovery following the treatment opportunity given him for his disease, which was disrupted by the petitioner's illness and the side effects of the medication prescribed him for its treatment.

Under the Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution, petitioner asserts that the Pennsylvania court's findings and judgment must be given at least res judicata effect in this subsequent Delaware proceeding involving the same criminal episode. In order for a fact determined in a prior criminal proceeding to have collateral estoppel effect in a later hearing, the determination must have been of an ultimate fact. United States v. Console, C.A. 3 (NJ), 13 F.3d 641, Curcio v. United States, 114 S.Ct. 1660, 128 L.Ed 2d 377, and Markoff v. United States, 115 S.Ct. 64, 130 L.Ed. 2d 21. Also see Pennsylvania decisions Commonwealth v. Smith, 626 A.2d 178; and Commonwealth v. Tolbert, 670 A.2d 1172.

In this case, the court's judgment of sentence is expressly based on a finding that petitioner's relapse and charged criminal behavior were the result of the side effects of medication. Since they were determined to be chemically induced through prescription medication, a finding of incorrigibility is inapposite the previous findings of fact and

8

judgment. In addition, there is even a question of whether criminal liability was appropriate because of involuntary intoxication, and induced relapse into active addiction as defense against criminal liability. The question of defense counsel's ineffectiveness for failure to raise this defense is just now occurring to petitioner and will possibly be raised in a separate post conviction proceeding.

In any event, once a n issue has been resolved in a prior proceeding, there is no further fact finding function to be performed. See Semenke v. Department of Revenue of State of Illinois, N.D. Ill, 166 B.R. 327; and Parlane Hosiery Co., Inc., v. Shore, N.Y., 99 S.Ct. 645, 439 US 322, 58 L.Ed 2d 552. (*It is significant that Delaware did not impose restitution because it had already been entered in the Pennsylvania proceeding*) Full Faith and Credit requires every state to give to a judgment at least the res judicata effect which the judgment would be accorded in the state which rendered it. See Davis v. U.S Steel Supply, Division of US Steel Corp., C.A. 3 (PA) 1982, 688 F. 2d 166.

This of course is a novel issue that is likely a matter of first impression in this court. In light of petitioner's pro se status, and lack of formal training in law, it is requested that this court adopt the rationale of Erickson v. Pardus, 127 S.Ct. 2197 (2007), in reviewing this claim, as well as all other presented in these proceedings. Petitioner asserts that the findings of the Pennsylvania court that petitioner's criminal conduct was the consequences of side effects of prescribed medication should foreclose Delaware later finding incorrigibility for the same conduct.

**IV.    Constitutional Deficiencies of State Habitual Offender Practices**

11 Del. C., subsection 4215(b) provides for an informal hearing before the sentencing judge which in Delaware is merely conducted to establish proof of prior conviction by a preponderance of the evidence, or clear and convincing proof. The legal standard is unclear, thereby tending toward unconstitutional vagueness. 11 Del. C., subsection 4215(b) provides in pertinent part as follows:

> "(b). If, at any time after conviction and before sentence, it shall appear to the Attorney General or to the Superior Court that, by reason of such conviction and prior convictions, a defendant should be subjected to subsection 4214 of this Title, the Attorney General shall file a motion

9

to have the defendant declared an habitual criminal under subsection 4214 of this Title. If it shall appear to the satisfaction of the court at a hearing on the motion that the defendant falls within subsection 4214 of this Title, the court shall enter an order declaring the defendant an habitual criminal and shall impose sentence accordingly."

In reviewing the constitutionality of 11 Del. C., subsection 4215(b), the Delaware Supreme Court in Key v. State, Del. Supr., 463 A.2d 633 (1983), held that a person facing habitual criminal proceedings must have reasonable notice of the State's intent to seek additional punishment, be present with counsel, have an opportunity to be heard with counsel, be confronted with witnesses against person, have the right to cross-examine, and offer evidence. In Bailey v. State, Del. Supr., 450 A.2d 400 (1982), the court found that, although the status hearing and sentencing hearing may be held on the same day, that the hearings should be kept separate. These decisions set forth standard of due process under the current state of the law in Delaware pertaining to habitual offender statutes in theory. However, in practice the standard of due process has consistently diminished. The boarder of interpretation of the statute which provided the right to be heard has diminished so that a defendant can only be heard with regard to the existence of prior conviction. A fair reading of Key, supr., makes it obvious that mitigating evidence against a finding of incorrigibility or the operation of the statutes was originally intended.

Petitioner presents the argument to this court that because the highest Delaware court has determined the State legislative intent of habitual criminal statute is to create a legal status which permits the legal banishing of individuals from civilized society on the basis of incorrigibility, incorrigibility then becomes the factual basis of the declaration. Although prior conviction may statutorily trigger the inquiry into the factual issue of a particular defendant's incorrigibility, pursuant to 11 Del. C., subsection 306, and federal principles of procedural and substantive due process, proof of prior conviction may only establish a rebut table presumption of incorrigibility, but not a unconstitutional conclusive presumption of incorrigibility. It only follows that the factual existence of incorrigibility, whether as a rebut table presumption or not, must be independently found before a declaration of habitual criminal status can constitutionally be upheld. It is the

10

failure of the procedure to require proof of incorrigibility, or at least allow for its' rebuttal as a presumption that constitutionally informs the statute and procedure in question.

Petitioner here argues that the standard governing habitual offender status outlined in Key v. State, Del. Supr., 463 A.2d 633 (1983); and Bailey v. State, Del. Supr., 450 A,2d 400 (1982), are constitutionally deficient, and overruled by the United States Supreme Court ruling in Apprendi v. New Jersey, 120 S.Ct. 2348 (2000). Petitioner presents the position that incorrigibility is a necessary fact that must be established or rebutted so that Delaware's statutory scheme does not produce a unconstitutional conclusive presumption of incorrigibility on proof of the less fact of prior convictions alone.

A presumption is an evidentiary device that enables the trier of fact to determine the existence of a statutory element of a crime, an "ultimate" or "elemental" fact, from the existence of one or more "basic" or "evidentiary" facts already proven. See County Court v. Allen, 442 US 140, 155 (1979). In Allen, the United States Supreme Court cautioned that a presumption is constitutionally invalid if it undermines the fact finder's responsibility to determine the existence of the essential elements of the inquiry. See Mullaney v. Wilbur, 421 US 684, 702-03 (1975). The record of this case will demonstrate that the Superior Court was clearly under the impression that proof of prior conviction ended the inquiry into whether petitioner was factually incorrigible, to the extent that overwhelming evidence of mitigating facts were disregarded. Even though petitioner admitted being eligible for habitual criminal sentencing by admitting prior convictions, the record will establish that the court was closed minded to mitigating evidence. The evidence of this fact is the court's failure to even review an article from a medical journal presented by the petitioner, when the court admitted having never heard of the side effects of the medication in question, and thereby implying a lack of understanding of the mitigating facts, when the article offered guidance in this regard.

There are Two (2) types of presumptions: (1) permissive presumptions, and (2) mandatory presumptions. It is the mandatory presumption implicated in this inquiry, and there are Two (2) types of mandatory presumptions: Conclusive and rebut table. See County Court V. Allen, supr. It is evident that a conclusive presumption is implicated in Delaware's practices of habitual offender proceedings in the proof of previous

11

convictions requiring a mandatory finding of incorrigibility created by 11 Del. C., subsection 4214 and 4215, as has been interpreted by Delaware case decisions. See Saunders v. State, Del. Supr., 401 A.2d 629 (1979), cert. denied, 449 US 845, 101 S.Ct 128, 66 L.Ed 2d 54 (1980); and State v. Cobb, Del. Super. Ct., 592 A.2d 983 (1990).

Petitioner argues that proof of incorrigibility is proof of fact that requires the higher standard of due process and 6th amendment protection as implicated by Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), and therefore the higher standard of due process and 6th amendment protection are required. Under the facts of this case the 8th amendment doctrine of evolving standards of decency is also implicated because of modern medical categorization of addiction as a brain disease, the prohibition against deliberate indifference to treatment needs for this disease and what this means pertaining to a chance for reform that must be provided before it can be said that a particular defendant is in fact incorrigible. In the instant case, petitioner's new offenses were the product of neuro-psychiatric side effects of medication. In addition, a judgment had been previously entered in a prior proceeding that determined that his crimes were the result of side effects of medication. A completely opposite finding of incorrigibility, which is contrary to the pre-sentence report in this case, is clear evidence of the constitutional deficiencies of Delaware's habitual criminal statutes and practices. It is evident under the Full Faith and Credit Clause Article IV, Section 1 of the United States Constitution, the previous entered judgment adopting the psychiatric report of Dr. Mechanick must be given at least res judicata effect in Delaware prohibiting a contradictory finding of incorrigibility. See Davis v. US Steel Supply, Division of US Steel, Corp., C.A 3 (pa) (1982), 688 F.3d 166; and also Durfee v. Duke, 84 S.Ct. 242, Herrera – Inirio v. INS, 208 F.3d 299, and Cooley v. Weinberger, 398 F. Supp. 479.

The Delaware legislative intent in enacting habitual offender statues to punish incorrigibility under a legislatively created status, makes it abundantly clear from a statutory construction view point that incorrigibility is a fact that is the basis of an increase in punishment. Petitioner submits that incorrigibility is a new finding of fact, avoided up to this point by the State judiciary, which increases the penalty for a crime beyond the prescribed statutory maximum. Petitioner reasons that this fact must be submitted to a jury under the rationale of Apprendi v. New Jersey, 120 S.Ct. 2348 (2000).

In this case, the petitioner's plea would necessarily be construed involuntarily and knowingly entered, as he is entitled to be appraised of any substantive rights which his plea waives in order to meet constitutional muster. Thus, petitioner is entitled to habeas corpus relief as sought in these proceedings.

### V. The Sentence Imposed in this Case is a Subsequent Criminal Sanction In Violation of the Double Jeopardy Prohibition Against Multiple Punishment for the same Offenses.

Finally, petitioner argues that the sentence imposed in this case is a second criminal sanction for the same offenses, and is barred by the Double Jeopardy prohibition against Multiple punishment for the same offenses.

As already indicated, petitioner was previously sentenced in the Delaware County Court of Common Pleas in the State of Pennsylvania on December 12, 2005, one year before the sentence was imposed in this case on December 1, 2006.

Petitioner references the multiple punishment argument presented in his opening brief on appeal before the Delaware Supreme Court, attached to the herein petition for writ of habeas corpus as exhibit B.

The respondents have replied to that argument suggesting that restitution is remedial and therefore is not a criminal sanction for double jeopardy purposes.

Petitioner counters and submits that restitution is a criminal sanction and fulfilling the function of retribution and deterrence. Restitution is penal, and can not be applied without a conviction. It is therefore a part of the criminal judgment and criminal sanction imposed. It is not merely remedial in that insurance already compensates a victim for loss, but is designed exact the financial consequence of a defendant actions from him. This is a retributive and deterrent function.

This proceeding presents the issue of whether restitution entered by negotiated plea in the Commonwealth of Pennsylvania for Delaware's burglary offenses constitute punishment for Double Jeopardy purposes when the Pennsylvania order of restitution was entered one year before Delaware entered a second criminal sanction. Petitioner submits that it is a penal sanction and operates a bar to subsequent criminal sanction for the same offenses.

13

## VI. Conclusion

Petitioner submits that after review of the attached psychiatric report of the Dr. Mechanick, the pre sentence report in the record of these proceedings, and the judgment of the Common Pleas Court in the Commonwealth of Pennsylvania, that he is entitled to have his sentence vacated as unconstitutional.

Respectfully Submitted,

Salih Hall

Enclosure

Xc: Gregory Smith, Esq.
   Ophelia M. Waters, Esq.
   Clerk of District Court
   file

I/M: Salih Hall
SBI# 104141   UNIT W-1
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



Clerk of Court
United States District Court
844 King Street
Wilmington, DE
(19801)

