IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SALIH (CECIL) HALL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. No. 08-27-SLR |
| | ) | |
| PERRY PHELPS, | ) | |
| Warden, and ATTORNEY | ) | |
| GENERAL OF THE STATE | ) | |
| OF DELAWARE | ) | |
| | ) | |
| Respondents. | ) | |

Salih (Cecil) Hall.  Pro se petitioner.

Gregory Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION**

July   9   , 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is Salih (Cecil) Hall's ("petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (D.I. 2)  Petitioner is a Delaware inmate in custody at the James T. Vaughan Correctional Center, Delaware.  For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner broke into the Joseph A. Banks men's clothing store in Greenville, Delaware on two separate occasions in April and May 2005 and stole a number of leather coats and men's suits.  *Hall v. State*, 937 A.2d 139 (Table), 2007 WL 3170467, at *1 n.1 (Del. Oct. 30, 2007).  The New Castle County grand jury indicted him on two counts of third degree burglary (Del. Code Ann. tit. 11, § 824), two counts of felony theft (Del. Code Ann. tit. 11, § 841), three counts of criminal mischief (Del. Code Ann. tit. 11, § 811), and one count of third degree attempted burglary (Del. Code Ann. tit. 11, §§ 531, 841).  In August  2006, petitioner pled guilty to two counts of third degree burglary, in exchange for which the prosecution dismissed the balance of the indictment.  On November 27, 2006, acting pro se, petitioner moved to dismiss the indictment on the basis of double jeopardy, but the Superior Court declined to consider petitioner's double jeopardy argument because he was represented by counsel.  The Superior Court sentenced petitioner as an habitual offender to ten years at Level V incarceration, suspended for two years at Level IV, suspended in turn after six months for Level III probation on the other burglary count.  (D.I. 19)

Petitioner filed a notice of appeal.  On February 27, 2007, after holding an

evidentiary hearing, the Superior Court determined that petitioner had knowingly chosen to dismiss counsel and represent himself on appeal. The Delaware Supreme Court affirmed petitioner's convictions and sentences. *Hall*, 2007 WL 3170467.

In January 2008, petitioner filed the application for federal habeas corpus relief presently pending in this court. (D.I. 2) The State filed its answer in June 2008. (D.I. 19) However, in February 2008, one month after he filed the instant application, petitioner filed a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), asserting, among other claims, five ineffective assistance of counsel allegations. The Superior Court denied the motion, and the Delaware Supreme Court affirmed that judgment. *See State v. Hall*, 2008 WL 755277 (Del. Super. Ct. Mar. 20, 2008); *Hall v. State*, 962 A.2d 257 (Table), 2008 WL 4762323 (Del. Oct. 31, 2008). Thereafter, on November 12, 2008, petitioner filed a motion in this proceeding asking to amend his federal habeas application with a new claim asserting ineffective assistance of counsel. (D.I. 34) In April 2009, petitioner filed another motion to amend his federal habeas application, asking the court to strike his previously filed motion to amend and add a new claim of ineffective assistance of counsel with five subparts. (D.I. 39) The State filed a response, asking the court to deny the amendment as futile. (D.I. 41) Petitioner then filed a document titled "motion for partial summary judgment." (D.I. 42)

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

2

("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  AEDPA also imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002);  *see Woodford*, 538 U.S. at 206.

One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider them on the merits.  *See Duncan v. Henry*, 513 U.S. 364, 365 (1995);  *Castille v. Peoples*, 489 U.S. 346, 351 (1989);  *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).  However, a federal district court must excuse a petitioner's failure to exhaust state remedies if state procedural rules bar the petitioner from

3

returning to state courts to obtain further relief for his claims; in other words, the claims are deemed exhausted because there is an "absence of an available State corrective process." 28 U.S.C. 2254(b); *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are nonetheless procedurally defaulted, and a federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *Lines,* 208 F.3d at 160; *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show that the errors during his trial worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494. Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Id.* at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and

4

actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If, however, the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A state court has adjudicated a claim on the merits for the purposes of § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

5

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct.  28 U.S.C. § 2254(e)(1).  A petitioner can only rebut this presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).  This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV.  DISCUSSION

### A.  Motions to Amend

Petitioner filed his original habeas application in January 2008, asserting the following four grounds for relief: (1) the Delaware Supreme Court violated his right to due process when it failed to decide two issues he presented in his direct appeal;  (2) his Delaware sentence violates the prohibition against double jeopardy because he pled guilty and was sentenced in the State of Pennsylvania for similar crimes he committed in a Joseph A. Banks store located in Pennsylvania;  (3) his Pennsylvania sentence constituted res judicata and was entitled to full faith and credit in Delaware, thereby prohibiting his being sentenced as a habitual offender in Delaware; and (4) the Delaware habitual offender statute is unconstitutional because it creates a conclusive presumption of incorrigibility and violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The court issued an order informing petitioner that the provisions of AEDPA apply to his application.  The order also requested that he file the court's standard AEDPA election

6

form by March 14, 2008 indicating how he wished to proceed by choosing one of the
following four options: (1) have the court rule on the application as currently pending;
(2) amend the application within thirty days to include all grounds; (3) withdraw the
application without prejudice so that he could file an all-inclusive application raising all
grounds within AEDPA's one-year limitations period; or (4) inform the court that some
type of relief other than federal habeas relief is being sought. (D.I. 4)

On March 10, 2008, rather than file his AEDPA election form, petitioner filed a
motion to stay his federal habeas application while he exhausted state remedies for an
unspecified ineffective assistance of counsel claim.[1] (D.I. 7) The court denied the
motion to stay on March 18, 2008, because the application as originally filed (and on
the date that petitioner filed the motion to stay) contained only exhausted claims and
petitioner's ability to file a future habeas application after proper exhaustion in the state
courts would not be clearly foreclosed by the expiration of AEDPA's one-year filing
period. (D.I. 8) See Rhines v. Weber, 544 U.S. 269 (2005); Pliler v. Ford, 542 U.S.
225 (2004). The court noted that it did not view the explicitly titled motion to stay as a
motion to amend;[2] the court also explained that a properly filed application for post-
conviction relief in the Delaware state courts would toll AEDPA's one-year limitations
period. The court instructed petitioner to file the AEDPA election form by April 4, 2008.
Petitioner filed the AEDPA election form on March 25, 2008, indicating that he wished

---

[1]Although petitioner's motion to stay referred to an "attached Rule 61 motion"
which presumably would have outlined the allegations, no such Rule 61 motion was
attached to the motion to stay filed in this court. (D.I. 7)

[2]The motion to stay did not indicate a desire to amend the application at that
point in time.

7

the court to rule on the application as currently pending. (D.I. 8)

In November 2008, petitioner field a motion to amend, asking to add a new claim alleging that his defense counsel provided ineffective assistance by "failing to investigate and research the use of psychiatric evidence in the possession of the defense, which established that petitioner's criminal conduct was the consequence of the neuro-psychiatric side effects of prescribed medication, as it could be applied as an affirmative defense against criminal liability under Delaware's involuntary intoxication defense law, or with regard to the impact of these side effects of medication on an alleged unrecorded confession which formed the ROOT of the prosecution's evidence, from which any other evidence was derived." (D.I. 34, at ¶ 3) Petitioner filed a second motion to amend in April 2009, this time: (1) asking the court to strike his first motion to amend and view the second motion as superseding the first motion; (2) re-asserting the four claims from his original application; and (3) asserting a new ineffective assistance of counsel claim alleging five distinct complaints regarding counsel's performance. Specifically, the new ineffective assistance of counsel claim in the second motion alleges that counsel performed deficiently by failing to: (1) investigate and research the use of psychiatric evidence in the possession of the defense, which could have been used to form an affirmative defense of involuntary intoxication; (2) object to petitioner's indictment on the basis that it listed the name Cecil Hall rather than his religious name, Salih Hall; (3) challenge Delaware's habitual offender statute as unconstitutional because it establishes a conclusive presumption of incorrigibility; (4) assert the res judicata effect of the Pennsylvania sentence because it required restitution for the Delaware crimes and, therefore, the Delaware sentence constituted a

8

multiple punishment for the same offense in violation of the prohibition against double jeopardy; and (5) investigate and perform true adversarial testing due to the under-staffing of the public defender's office. (D.I. 39)

Petitioner's motions to amend are governed by Federal Rule of Civil Procedure 15(a), which provides that

[a] party may amend the party's pleadings once as a matter of course at any time before being served with a responsive pleading. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). Although Rule 15 states that leave to amend should be freely given, the court has discretion to deny a request to amend if it is apparent from the record that: (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (2) the amendment would be futile; or (3) the amendment would prejudice the other party. See, e.g., Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The "question of undue delay requires [that the court] focus on the movant's reasons for not amending sooner"[3] and, "[w]hen a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006). In addition, an amendment to a habeas application will be considered futile when the claims are subject to a procedural default or lack arguable merit. Cf. Riley v. Taylor, 62 F.3d 86, 91 (1995)(permitting amendment of habeas application where the new claims had arguable merit and appeared to have been fully exhausted and not the subject of a procedural default).

---

[3]Cureton v. Nat'l Collegiate Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).

9

After reviewing petitioner's motions in context with the record, the court denies petitioner's motions to amend on the basis of undue delay and futility. To begin, petitioner knew about his complaints with counsel's performance as early as February 7, 2008, the date on which he filed the Rule 61 motion in the Delaware Superior Court.[4] See (D.I. 19) The two AEDPA election forms issued by this court (in February and March 2008) provided petitioner with two separate opportunities to either amend his application or withdraw it without prejudice so that he could file one all-inclusive habeas application after exhausting state remedies. If petitioner had opted to withdraw the application without prejudice, he could have filed a new application containing the instant ineffective assistance of counsel claim after the Delaware Supreme Court decided his post-conviction appeal. Petitioner, however, did not ask to amend or withdraw the application when given the two chances; rather, he chose to proceed with the application as originally filed, and waited until November 2008 and April 2009 to seek the instant amendment. Petitioner has not provided the court with any reason for failing to take advantage of the previous opportunities to either amend the application or withdraw it without prejudice.[5] Therefore, in these circumstances, the court concludes that petitioner engaged in undue delay in seeking an amendment.

---

[4]On February 14, 2008, seven days after he filed the Rule 61 motion in the Delaware Superior Court which asserted five ineffective assistance allegations, petitioner filed in this court a memorandum in support his habeas application. Not only does petitioner's memorandum in support fail to include any ineffective assistance of counsel allegations but, also, petitioner did not ask to amend the application at that time to include the ineffective assistance of counsel claims nor did he ask to withdraw the application to include such claims after exhaustion.

[5]In addition, petitioner has provided no explanation as to why he waited an additional five months after November 2008 to file his second motion to amend.

10

In turn, the court concludes that the proposed amendment would be futile.

Three of the newly proposed ineffective assistance of counsel allegations are subject to

the procedural default rule because petitioner failed to raise them on post-conviction

appeal,[6] and all five ineffective assistance of counsel claims lack arguable merit.[7]

---

[6]Petitioner did not present the following three allegations on post-conviction appeal: (1) counsel failed to object to petitioner's indictment on the basis that it listed the name Cecil Hall rather than his religious name, Salih Hall; (2) during petitioner's sentencing hearing, counsel failed to challenge Delaware's habitual offender statute as unconstitutional because it establishes a conclusive presumption of incorrigibility; and (3) during petitioner's sentencing hearing, counsel failed to assert the res judicata effect of the Pennsylvania sentence because it required restitution for the Delaware crimes and, therefore, the Delaware sentence constituted a multiple punishment for the same offense in violation of the prohibition against double jeopardy. Consequently, the Delaware Supreme Court held that these three ineffective assistance of counsel claims were waived under Delaware Supreme Court Rule 8. The Court of Appeals for the Third Circuit has explicitly held that Delaware Supreme Court Rule 8 constitutes an independent and adequate state procedural rule for procedural default purposes, thereby precluding federal habeas review absent a showing of cause and prejudice. See Campbell v. Burris, 515 F.3d 172 (3d Cir. 2008). Here, petitioner has not alleged cause and prejudice for his waiver, nor has he demonstrated that the court should review the claims to prevent a miscarriage of justice. Thus, even if these three allegations were added to the application, the court would be procedurally barred from reviewing their merits.

[7]To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that: (1) counsel's performance fell below an objective standard of reasonableness measured under prevailing professional norms; and (2) counsel's deficient performance actually prejudiced the petitioner's case. Strickland v. Washington, 466 U.S. 668, 690 (1984). In the context of a guilty plea, a petitioner satisfies Strickland's prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). Here, none of the arguments counsel allegedly failed to assert have any merit and, therefore, petitioner cannot satisfy either prong of the Strickland test. For instance, during his plea colloquy, petitioner explicitly informed the court that he was willing to respond to the name Cecil Hall, despite the fact that he had changed his name to Salih. In his correspondence with counsel, petitioner consistently referred to himself as "Salih AKA Cecil Hall," and he did not object to being called Cecil by his attorney. See Hall, 2008 WL 755277, at *4. Therefore, counsel did not perform deficiently by failing to object to the indictment on the basis of petitioner's name change.

In turn, as explained later in the opinion, petitioner's incorrigibility and res judicata/double jeopardy arguments lack merit. Consequently, counsel's failure to raise these arguments did not violate *Strickland*.

And finally, the involuntary intoxication defense was not available in petitioner's case, thereby demonstrating that counsel did not perform ineffectively by failing to raise a meritless argument. In Delaware, involuntary intoxication is only a defense if the intoxication was involuntary and the actor "lacked substantial capacity to appreciate the wrongfulness of the conduct or to perform a material element of the offense, or lacked sufficient willpower to choose whether the person would do the act or refrain from doing it" at the time of the conduct. Del. Code Ann. tit. 11, § 423. Petitioner contends that counsel should have advised him that the psychiatric report submitted by Dr. Mechanick in his Pennsylvania proceeding provided a basis for asserting involuntary intoxication as a defense in his Delaware criminal proceeding. However, the substance of Dr. Mechanick's report demonstrates that the defense was not applicable in petitioner's case. For instance, Dr. Mechanick opined that, "[a]lthough [petitioner's] mood disorder substantially affected his thinking, feeling, and behavior, there is no evidence that it caused [petitioner] not to know the nature and quality of the acts he was doing or not to know that what he was doing was wrong. . . In any case, the available evidence indicates that [petitioner's] memory and other cognitive problems that were part of his mood disorder did not cause him to be unable to form the intent to commit those crimes." (D.I. 31, at p.10) Dr. Mechanick also asserted that, "even though the interferon created a psychiatric condition that [petitioner] did not choose to have, the available evidence does not indicate that [his] behavior in committing the crimes was involuntary. . . [Petitioner] made conscious choices to go through a number of steps to arrive at the store on more than one occasion and to burglarize it. He made choices to exchange the stolen goods for heroin. Thus, while he was mentally ill at the time of the charges, [petitioner's] behavior was not involuntary." *Id.* at p. 11.

As explained by the Delaware Superior Court in petitioner's state collateral proceeding, counsel reviewed Dr. Mechanick's report, spoke with petitioner about the strengths and weaknesses of his case, and ultimately determined that there was no evidence supporting an involuntary intoxication defense in petitioner's case before petitioner entered his guilty plea. The Delaware Superior Court ultimately held that counsel performed effectively in this respect and the Delaware Supreme Court affirmed that decision. The objective reasonableness of counsel's conclusion that the defense was not applicable to petitioner's case is clearly demonstrated when Dr. Mechanick's findings are viewed in context with the requirements for a defense of involuntary intoxication under Delaware law. Given the inapplicability of the defense to petitioner's situation, the Delaware Supreme Court's decision affirming the Superior Court's denial of the claim does not warrant relief under § 2254(d) because petitioner cannot demonstrate prejudice under *Strickland*.

In turn, petitioner stated during his plea colloquy that he was satisfied with counsel's performance and nothing in his proposed amendment overcomes the strong presumption of verity resulting from the statements he made while under oath. *See*

Accordingly, the court will deny petitioner's motions to amend.[8]

## B. Claim One

In claim one, petitioner argues that the Delaware Supreme Court violated

"fundamental due process" during his direct appeal by failing to consider the following

two claims he presented in his appellate brief: (1) Delaware's habitual offender statutes

create an unconstitutional presumption of incorrigibility on the basis of the lesser fact of

prior conviction alone; and (2) the Delaware courts erred by failing to give full faith and

credit to the finding by a Pennsylvania state court that the conduct forming the basis of

his criminal actions was caused by side effects of prescribed medication. See (D.I. 21,

Hall v. State, No.649, 2006, Motion for Rehearing En Banc) The court concurs with the

State's argument that the Delaware Supreme Court's failure to consider certain issues

on appeal does not create an independently cognizable argument in this federal habeas

---

Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings."). Thus, the court concludes that the last two allegations regarding counsel's failure to pursue the defense of involuntary intoxication lack arguable merit.

[8]The State has asked the court to deny the motions to amend as futile because three of the new arguments are procedurally defaulted and adding them to the application would result in a mixed habeas application requiring dismissal. (D.I. 41) The court, however, disagrees with the State's futility argument because, even though three of the five ineffective assistance of counsel allegations are procedurally defaulted, those claims are not considered unexhausted for the purposes of determining whether an application is mixed and requires dismissal under Rose v. Lundy, 455 U.S. 509 (1982). See Wenger v. Frank, 266 F.3d 218, 227-28 (3d Cir. 2001)("[a] petition containing unexhausted but procedurally barred claims in addition to exhausted claims, is not a mixed petition requiring dismissal under Rose."). Therefore, the court's denial of the motion to amend as futile is not premised on the State's "mixed petition" argument.

13

proceeding;[9] rather, such failure affects the level of deference the court must accord to the Delaware Supreme Court's decision.[10] Accordingly, the court will deny claim one for failing to provide a proper basis for federal habeas review.[11]

## C. Claim Two

In addition to the burglaries petitioner committed against the Joseph A. Banks store in Delaware, petitioner committed several similar burglaries of another Joseph A. Banks store in Pennsylvania between April and June 2005. In December 2005, petitioner pled no contest to four counts of burglary in Pennsylvania. During his plea colloquy before the Pennsylvania Common Pleas Court, petitioner admitted that he had burglarized another Joseph A. Banks store in Delaware. Petitioner agreed to forfeit an automobile that he used to facilitate his crimes, and he agreed to pay restitution in the amount of $37,402 to Joseph A. Banks. The restitution amount submitted by Joseph A. Banks ($37,402) was for property loss in both its Pennsylvania and Delaware stores without any breakdown between jurisdictions.

---

[9]See Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004)(explaining that "the federal role in reviewing an application for federal habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's proceeding."); see also Abu-Jamal v. Horn, 520 F.3d 272, 297 (3d Cir. 2008).

[10]Petitioner has presented the same two arguments as independent issues in claims three and four of his application. As explained later in the text of this opinion, given the Delaware Supreme Court's failure to review the arguments on direct appeal, the court will review the two claims de novo. See infra at pp. 17-20.

[11]Alternatively, if claim one is cognizable on federal habeas review, it does not warrant federal habeas relief. As explained later in this opinion, the two arguments asserted in claim one lack merit and, therefore, the Delaware Supreme Court's failure to review those meritless arguments does not rise to the level of a due process violation.

14

In this proceeding, petitioner contends that the Pennsylvania restitution order and his subsequent sentence in Delaware as a habitual offender constitute multiple punishments for the same Delaware burglaries and, therefore, violate the prohibition against double jeopardy. Petitioner presented this claim to the Delaware Supreme Court on direct appeal. The Delaware Supreme Court denied the claim after explaining that petitioner's voluntary and knowing guilty plea in Delaware effectuated a waiver of his right to raise a double jeopardy argument. In addition, the Delaware Supreme Court denied the argument as meritless because "petitioner was not charged with or convicted of the Delaware burglaries in Pennsylvania, and was not subject to criminal punishment for the Delaware burglaries in Pennsylvania." *Hall*, 2007 WL 3170467, at *1. Citing *Green v. United States*, 355 U.S. 184, 187-88 (1957), the Delaware Supreme Court held that the prohibition against double jeopardy was not implicated in petitioner's case. *Id.*

The Delaware Supreme Court's determination that petitioner waived his double jeopardy argument by entering a guilty plea was based on Delaware law, not Federal constitutional law. Therefore, the court will address the State Supreme Court's alternative denial of the claim as meritless and determine if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

The double jeopardy clause provides that "no person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The United States Supreme Court has explained that the clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second

15

prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440 (1989); *United States v. Baird*, 63 F.3d 1213, 1215 (3d Cir. 1995). However, pursuant to the "dual sovereignty doctrine," the double jeopardy clause does not bar separate states or sovereigns from bringing successive prosecutions for the same conduct. *See Heath v. Alabama*, 474 U.S. 82, 88 (1985)(a "State's interest in vindicating its sovereign authority through enforcement of its laws by definition can never be satisfied by another State's enforcement of its own laws."). The dual sovereignty doctrine applies to cases involving multiple punishments, not just to cases involving multiple prosecutions. *See United States v. Lanza*, 260 U.S. 377, 382 (1922)("It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.").

Applying these principles to petitioner's case, the court concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. To begin, the court rejects as specious petitioner's implicit argument that the Pennsylvania restitution order covering the losses in Pennsylvania and Delaware somehow indicates that the Pennsylvania court had jurisdiction over the Delaware crimes or that the Pennsylvania court prosecuted the Delaware crimes for double jeopardy purposes when it issued the restitution order. The burglaries that petitioner committed in Pennsylvania were completely distinct and separate from the burglaries he committed in Delaware. Petitioner was not charged with or convicted of the Delaware burglaries in Pennsylvania, nor was he charged with or convicted of the Pennsylvania burglaries in

16

Delaware. Even if the court accepts petitioner's argument that the Pennsylvania restitution order is punitive in nature and not remedial, the double jeopardy clause is not implicated. This case involves two different states prosecuting and punishing the same person for completely different crimes and, in addition, petitioner was not ordered to provide restitution twice; the Delaware Superior Court explicitly stated that it would not order restitution because the Pennsylvania restitution order covered all the property losses.

Alternatively, even if the offenses which Pennsylvania and Delaware prosecuted and imposed punishment for could be characterized as the "same offenses," petitioner's double jeopardy argument fails under the dual sovereignty doctrine. Accordingly, the Delaware Supreme Court's denial of claim two does not warrant relief under § 2254(d).

### D. Claims Three and Four

In claims three and four, petitioner merely re-asserts as independent claims the arguments contained in claim one, namely, that the Delaware Superior Court failed to give res judicata effect and/or full faith and credit to this Pennsylvania conviction and sentence when it imposed his habitual offender sentence and that Delaware's habitual offender statute creates an unconstitutional presumption of incorrigibility which violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Petitioner presented these two claims to the Delaware Supreme Court on direct appeal, mainly as part of his double jeopardy argument (claim two in this proceeding). The Delaware Supreme Court did not implicitly or explicitly address the issues raised in the two claims when it affirmed

17

petitioner's conviction and sentence.[12]   Therefore, the court will review claims three and

four de novo.[13]   *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004).

## 1. Unconstitutional presumption of incorrigibility

Petitioner contends that his habitual offender sentence is unconstitutional

because it is based on an irrebuttable conclusive presumption of incorrigibility:

"[I]ncorrigibility is a new finding of fact . . . which increases the penalty for a crime

beyond the prescribed statutory maximum . . . [and is a] fact [that] must be submitted to

a jury under the rationale of *Apprendi v. New Jersey*." (D.I. 5, at p.12)   This argument,

however, lacks merit.   To begin, "[t]he purpose of [Delaware's] habitual offender statute

is to separate civilized society from individuals who have demonstrated their

incorrigibility by repeatedly being incarcerated, released, and convicted of subsequent

criminal offenses." *Siple v. State*, 701 A.2d 79, 85 (Del. 1997).   The Delaware Supreme

Court has held that Delaware's habitual offender statute is constitutional. *See Williams*

*v. State*, 539 A.2d 164, 180 (Del. 1988).   In turn, the United States Supreme Court has

upheld habitual offender statutes that are more severe than Delaware's, noting that a

State legislature can properly place upon a defendant the "onus of one who is simply

unable to bring his conduct within the social norms prescribed by the criminal law of the

State." *Rummel v. Estelle*, 445 U.S. 263, 284 (1980); *see Ewing v. California*, 538 U.S.

---

[12]The Delaware Supreme Court addressed petitioner's argument that his sentence as a habitual offender constitutes cruel and unusual punishment without any discussion of petitioner's argument regarding the "presumption of incorrigibility" or res judicata/full faith and credit.

[13]De novo review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

18

11 (2003). According to the Supreme Court, "[i]n repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offenses . . . is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Witte v. United States*, 515 U.S. 389, 400 (1995). Therefore, to the extent petitioner has raised a general challenge to the constitutionality of Delaware's habitual offender statute, that challenge fails to warrant relief under § 2254(d).

Petitioner's reliance on *Apprendi* does not dictate a different conclusion. In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Here, petitioner does not challenge the validity of his prior convictions for habitual offender purposes but, rather, he creatively argues that his incorrigibility is a "fact" to be determined by a jury. Contrary to his assertion, however, the term "incorrigibility" as used in this context merely means repetitive criminal behavior or, stated another way, prior convictions. Therefore, the court will deny as meritless petitioner's argument that  Delaware's habitual offender statute creates an unconstitutional presumption of incorrigibility.

### 2. Pennsylvania proceeding and the effect of res judicata and the full faith and credit clause

In claim three, petitioner contends that the Delaware State Courts erred by failing to recognize the res judicata effect of his Pennsylvania conviction and sentence and by failing to give his Pennsylvania conviction full faith and credit. However, as a general

19

rule, criminal judgments from different states are not entitled to full faith and credit because no State is bound to enforce the penal laws of another State or to punish a person for wrongs committed against another State. *Nelson v. George*, 399 U.S. 224, 229 (1970). In turn, although the doctrine of res judicata[14] applies to both criminal and civil proceedings,[15] a judgment in a criminal case operates as res judicata in another criminal case only when the parties to both cases are identical. *See Smith v. United States*, 243 F.2d 877 (6th Cir. 1957). Consequently, the doctrine does not apply to successive prosecutions by different sovereigns. *See Ashe v. Swenson*, 397 U.S. 436, 442-45 (1970)(discussing criminal collateral estoppel).

Here, Pennsylvania and Delaware are separate sovereigns and parties. Accordingly, the court concludes that petitioner's res judicata/full faith and credit arguments do not warrant federal habeas relief.

## E. Motion for Partial Summary Judgment

Petitioner has filed a motion for partial summary judgment, which merely re-asserts the arguments raised in his application for federal habeas relief. As just explained, the court has concluded that petitioner's application does not warrant federal habeas relief. Accordingly, the court will deny the motion for partial summary judgment as moot. (D.I. 42)

---

[14]An expansive definition of the principle of res judicata precludes a relitigation of the same claim and issues in a subsequent trial. *See Purter v. Heckler*, 771 F.2d 682, 689 n.5 (3d Cir. 1985).

[15]*Sealfon v. United States*, 332 U.S. 575, 578 (1948).

20

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, a certificate of appealability will not be issued.

## VI. CONCLUSION

The court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.

21